UNITED STATES of America, Plaintiff,

v.

**Addam W. SWAPP, Vickie L. Singer, Jonathan R. Swapp, John Timothy Singer, Defendants.**

No. 88–CR–006J.

United States District Court,
D. Utah, C.D.

June 12, 1989.

David Schwendiman, Richard Lamvert, Creighton Horton, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff.

Grant W.P. Morrison, Salt Lake City, Utah, for Addam W. Swapp.

Kathryn Collard, Salt Lake City, Utah, for Vickie L. Singer.

J. Bruce Savage, Park City, Utah, for Jonathan R. Swapp.

G. Fred Metos, Salt Lake City, Utah, for John Timothy Singer.

## MEMORANDUM OPINION

JENKINS, Chief Judge.

When sentence was first imposed in this matter, the Sentencing Guidelines had been struck down as unconstitutional by an *en banc* opinion of this court.[1] While this issue was on appeal from this court the Supreme Court spoke in *United States v. Mistretta,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and upheld the Sentencing Guidelines as Constitutional. The Tenth Circuit in light of *Mistretta* remanded this matter for re-sentencing under the guidelines. 868 F.2d 1201. An amended presentence report was prepared for each defendant and discussed pursuant to sections 6A1.1 through 6A1.3 of the *United States Sentencing Commission Guidelines Manual* ("Guidelines") (as amended June 15, 1988). Other than the issue of "acceptance of responsibility" as to defendants Addam and Jonathan Swapp and Vickie Singer,[2] factual disputes arising from the up-dated presentence report had been resolved by the time of sentencing. The Guidelines state the following:

(a) **Factors to be considered in imposing a sentence.**—*The court shall impose a sentence sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider ...

(2) *the need for the sentence imposed—*

(A) *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*

(B) *to afford adequate deterrence* to criminal conduct;

(C) *to protect the public from further crimes* of the defendant; and

(D) *to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....*

18 U.S.C. § 3553(a)(2), (emphasis added). The defendants were re-sentenced on April 20, 1989. At each sentencing, the court asked the United States Attorney to summarize the evidence and to state the recommended sentence (including supervised release) provided by the Guidelines as to each specific count. The court also asked the United States Attorney to state the position of the United States as to the justification, if any, for the court to depart above or below the recommended Guidelines sentence on each count, and to comment on how such recommendations would achieve the social purposes set forth in the Guidelines. At the time of sentencing the court reserved the right to write on the matter.

### I.

On May 9, 1988 the defendant Addam Swapp was found guilty by a jury on Counts I, II, III, IV, V, VI, and VII of

---

**1.** *United States v. Addam Swapp, et. al,* 695 F.Supp. 1140 (D.Utah, 1988). The Sentencing Guidelines were promulgated by the United States Sentencing Commission, a body created under the Sentencing Reform Act of 1984, as amended 18 U.S.C. § 3551 et seq. (1982 ed. Supp. IV); 28 U.S.C. §§ 991–998 (1982 ed. Supp. IV).

**2.** Section 3E1.1 of the *Guidelines* states:

"If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction, reduce the offense level by 2 levels." The government disagrees with the presentence reports of these defendants finding an acceptance of responsibility.

the Amended Superseding Indictment. Sentences imposed for offenses set forth in Counts I, III, V, and VII are subject to the Guidelines; sentences imposed for offenses set forth in Counts II, IV, and VI are not. Under the Guidelines, in order to limit the sentencing significance of the formal charging decision by a United States Attorney and thus to prevent unwarranted multiple punishment for acts arising out of the same incident, similar offenses are grouped together wherever possible. Chapter 3, Part D of the Guidelines, *Introductory commentary.* Where grouping is possible, the Guidelines sentence is determined by the offense in the group which requires the longest term of imprisonment. In effect, by grouping offenses, concurrent sentences for grouped substantive offenses are imposed. While the Guidelines adopt a policy of grouping, a conviction under a statute which calls for a mandatory minimum consecutive sentence is excepted from the Guidelines and is excepted from the policy of grouping, whether or not such offense would ordinarily be "grouped" because of obvious offense similarity. Guidelines, sections 2K2.4, 5G1.2(a), and section 3D1.2, *Commentary,* Note 1. In this case, a violation of 18 U.S.C. § 924(c) requires a mandatory five-year sentence to be served consecutively with any other sentence imposed. Counts II, IV, and VI are 18 U.S.C. § 924(c) Counts and are not to be grouped.

■ Counts I and II of the Amended Superseding Indictment read as follows:[3]

### COUNT I

A. On or about January 16, 1988, in the Central Division of the District of Utah,

### ADDAM W. SWAPP, and VICKIE L. SINGER,

did knowingly and maliciously damage and attempt to damage, by means of an explosive, a building, to wit: the Kamas Utah Stake Center of the Church of Jesus Christ of Latter-day Saints located at

3038 North Highway 189, Marion, Utah, a building used in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and did aid and abet therein; all in violation of 18 U.S.C. § 844(i) and (2).

### COUNT II

A. On or about January 16, 1988, in the Central Division of the District of Utah,

### ADDAM W. SWAPP, and VICKIE L. SINGER,

did knowingly use and aid and abet in the use of a deadly and dangerous weapon and device, to wit: a bomb, during and in relation to the crime of violence set forth in Count I above, which is incorporated herein by reference; all in violation of 18 U.S.C. § 924(c)(1) and (2).

It is fundamental that a defendant may only be convicted of two separate offenses arising from a single act if each offense requires proof of a fact not essential to the other. *United States v. Crew,* 538 F.2d 575, 577 (4th Cir.1976); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1931). In the original sentencing the court imposed a sentence of five years as to Count I and stayed sentence as to Count II on the grounds that to sentence on Count II would be unlawfully cumulative or duplicative of the sentence imposed on Count I. It seemed to the court inappropriate at the time of the original sentencing to sentence twice on the same event, supported by identical proof. It seems even more inappropriate now. As previously stated by this court,[4] by virtue of the way the pleadings are written in this case as to Counts I and II, the transaction proved as to Count II is the same transaction as that proved as to Count I—nothing factually new is required as to Count II. The court is not suggesting and never has suggested that 18 U.S.C. § 924(c) can never be used in connection with a violation of 18 U.S.C. § 844(i); the court is saying, how-

**3.** The counts were originally Count II and III but during pretrial Count I, a conspiracy count, was dismissed on the motion of the United States and the remaining counts re-numbered.

**4.** Memorandum Opinion of January 4, 1989.

ever, that in this case as to Counts I and II, where the pleadings as written require the same proof—where one is to be punished for destroying a building through the use of a bomb and then further punished for destroying the same building through the use of the same bomb—to sentence on both counts is unlawfully cumulative. To do so would impose double punishment. The punishments provided are different and indeed are in conflict as to term and value.

██ In sentencing as to Count I under the Guidelines, the statute provides that a defendant can be sentenced from zero to ten years. Court discretion, provided by statute, is subsequently tempered by the Guidelines. The United States Attorney stated that, as to defendant Addam Swapp and as to Count I, Section 2K1.4 of the Guidelines provides a base offense level of four which is then increased by fifteen offense levels (eleven to incorporate the amount of damage caused, two to indicate that more than minimal planning was involved, and two for his role as leader) resulting in a total offense level of nineteen. Transcript of Re-sentencing, April 20, 1989, ("Transcript") at 8. According to the United States Attorney, the recommended Guideline sentence for Count I is from thirty to thirty-seven months.[5] Count II, the companion count to Count I, is a non-Guideline Count. According to the United States Attorney, Count II requires a mandatory five-year sentence to be served consecutively to any other offense. The Guidelines state that when a mandatory sentence is imposed in conjunction with a sentence for an underlying offense, in order to avoid double counting the use or possession of a weapon is not considered in sentencing for the underlying offense. Guidelines, section 2K2.4 *background commentary*. But no one—Congress, the Sentencing Commission, nor the United States

Attorney—ever considered what to do if the use of an explosive—the bomb—is in fact charged and proved in the underlying offense. At the time of sentencing the United States Attorney indicated that if Count II did not exist, the offense level for Count I would be increased an additional two points to incorporate the use of an explosive device. This increase under the Guidelines would result in additional imprisonment of seven to nine months. This base increase would raise the recommended sentence to between thirty-seven and forty-six months. Transcript at 11. In other words, Count II, the 18 U.S.C. § 924(c) Count, imposes five years. The Guidelines, for the identical use of an explosive device, impose seven to nine months.[6] The court is then left with the impossible task of trying to reconcile conflicting directions given to the court by Congress and by its surrogate, the Commission.

While the prosecutor may not have intended in this instance that Count I contain the augmenting factor—the use of an explosive—Count I as written did in fact so charge. The defendant was convicted of Count I as written, and is thus subject to the seven to nine month augmenting factor. The fact that the augmenting factor, now requiring a sentence of five years, is also included in Count II, a non-Guidelines Count, does not compel the court to ignore the identical factor in Count I in determining the applicable Guidelines base. In establishing an appropriate sentence for Count I Congress has not provided a floor of five years; the range is zero to ten years, or as to the Guidelines, thirty-seven to forty-six months.

██ At re-sentencing, the court imposed a sentence of five years on the defendant as to Count I, an upward departure from the Guidelines recommendation of

---

5. The government pointed out that this did not include a decrease of two for acceptance of responsibility but added that the adjustment for acceptance of responsibility occurs after the court has grouped the counts and has arrived at a combined adjusted offense level. Transcript at 8.

6. The United States Attorney acknowledged the discrepancy of term depended not on the event but on whether or not the prosecution decided to charge a 924(c) count. The United States Attorney could not reconcile such discrepancy in punishment with the purposes for punishment set forth in the Guidelines. Transcript at 17. Neither can the court.

thirty months.[7] In so doing, the court included the increase of seven to nine months for the use of an explosive as provided by the Sentencing Guidelines and then augmented further, and in doing so made an express finding that the additional months reflected the defendant's use of an explosive device, as well as the extensive damage to property.[8] Having already augmented in accordance with the Guidelines, the court finds that it would be unlawfully cumulative to augment again for identical factors, as sentencing on Count II would in fact do. To do so raises questions of double jeopardy, due process, and elementary fairness, particularly when one considers the professed goals and purposes set forth in the Guidelines. Disabilities found in Count II are not present as to Counts IV and VI. There, non-Guidelines mandatory minimum sentences of five years each are required and, in accordance with the statute, were imposed.

On Count III the defendant was found guilty of an attempt to kill a federal officer and aiding and abetting therein, in violation of 18 U.S.C. §§ 1114 and 2. This was determined to have a base offense level of twenty under section 2A2.1 of the Guidelines, which was then increased by two points for more than minimal planning, three points for an official victim, and two points for the defendant's role as leader, resulting in a total of twenty-seven. The recommended sentence under the Guidelines for the Count III offense is seventy to eighty-seven months and three years of supervised release.[9] In sentencing under the Guidelines the length of sentence is determined by the most heinous offense grouped—the offense which empowers the longest term of imprisonment of the grouped offenses. In this case Count III

has the highest adjusted offense level of all of the Guideline Counts and so is the controlling count for purposes of sentencing. Transcript at 62–63.

Under the Guidelines Count V, resisting and impeding federal officers in violation of 18 U.S.C. §§ 111 and 2, has a base offense level of three, which is increased to ten to take into account two points for more than minimal planning, three points for an official victim, and two points for the leadership role of the defendant. The recommended sentence according to the Guidelines is six to twelve months. Count VII, possession of an unregistered device, is grouped with Count I under the Guidelines. Its base offense level is twelve which is increased to fourteen when the two points for the role of the defendant are added. The recommended sentence on Count VII is fifteen to twenty-one months.

In sentencing on Counts I, III, V, and VII, the Court recognized the policy in the Guidelines of grouping multiple counts and that Count III is the controlling count. In order to clarify the record and the court's reasons for final sentencing, however, the court expressly sentenced on each count and then indicated that the sentences imposed on Counts I, V, and VII were to run concurrently with the sentence imposed on Count III, on which the court imposed a sentence of seventy months plus a term of three years of supervised release. Transcript at 73. The court did expressly what the Guidelines do implicitly through the grouping process. In addition, the court imposed the mandatory sentence of five years each on Counts IV and VI, to run consecutively with one another and with the sentence imposed on Count III and all of the other concurrently sentenced counts. As noted by the United States Attorney

---

7. This reflects the court's finding of an acceptance of responsibility by the defendant, as stated further on in this opinion, and thus lowers the adjusted offense level.

8. The United States Attorney had noted that the amount of damage involved, were Count I to stand alone, might justify an upward departure. Transcript at 11.

9. Although section 3583 of the "Sentencing Reform Act" says that the court "may" impose

supervised release, the Guidelines say that it "shall" impose such release. The United States Attorney noted, however, that the government felt that in this case supervised release is meaningless, because when the defendant finishes his term of incarceration in federal prison he returns to the State of Utah and begins serving a term of imprisonment of from one to fifteen years in the state penitentiary. Transcript at 24.

during sentencing, reduction of the offense level for acceptance of responsibility occurs once the court has arrived at a combined adjusted offense level as the result of grouping. The court finds that the defendant in his own somewhat convoluted way has made a sufficient showing of acceptance of responsibility and that his offense level should be reduced accordingly.

At re-sentencing the defendant Addam Swapp received an aggregate of terms which totals fifteen years and ten months. The range of sentence recommended by the United States Attorney was between twenty years and ten months and twenty-two years and three months, with the United States indicating satisfaction with the lower figure, a dramatic departure from the much longer and inordinately punitive term sought when sentence was originally imposed. Transcript at 31. As noted above, the recommended Guidelines sentence for the underlying substantive counts (Counts I, III, V, and VII) falls between five years ten months and seven years three months (plus three years of supervised release). The Court imposed the Guidelines figure. The three companion non-Guidelines counts, if not duplicative, would require an additional fifteen years—five years each— to be added by Congressional direction to the Guideline Sentence of five years and ten months imposed on Counts I, III, V, and VII.

As set forth above, Count II duplicates Count I. Due to the coupling of Guideline and non-Guidelines sentences and to contradictory Congressional policy, it seemed to the court at the time of sentence, and seems even more so now, that the hybrid sentence imposed aptly reflects the seriousness of the offenses, promotes respect for the law insofar as conflicting policies allow, and provides just punishment for the offenses charged. It should be noted that an additional indeterminate punishment has been imposed on this defendant in a state forum for a charge made in that forum. In addition, both deterrence and protection have been taken into consideration by this court, as well as the needs of the defendant.

It is clear to the court that neither Congress nor the Sentencing Commission ever contemplated that mandatory sentencing of multiple counts could disembowel the professed policy of grouping, that an augmenting factor could be valued by the Commission at seven to nine months if considered as part of the underlying offense and valued by Congress at sixty months if considered as a separate and non-duplicative offense. In the opinion of the court that makes no sense at all. There is great danger in the potential for untrammeled stacking of mandatory minimum counts by a zealous prosecutor, and thus for the thwarting of the policy of grouping. Such stacking could also undermine the intent and purpose of Congress and its surrogate, the Commission, in reaching their professed goal of uniformity of punishment. There is no genuine oversight of the stacking of mandatory minimum charges with these built-in, pre-determined sentences. Congress has great need to mesh Guidelines and non-Guidelines offenses, particularly when such offenses are obviously similar and would ordinarily be grouped. Only then would the judge have the tools to achieve what the Guidelines say should be "sufficient" but "not greater than necessary" punishment. 18 U.S.C. § 3553(a).

■ The court notes that the defendant has no prior record of consequence. This is his first important clash with the law. Sorrowfully, it had serious and unhappy consequences for many people. The defendant's claim to status and personal communications with "higher powers" may explain his conduct, but in no way relieves him from his duty as a citizen to comply with the rules of the civil society in which he lives. (His claims are not without some analogy in the cultural history of the area). Sentence is imposed not for what the defendant claims or professes but solely for what the jury has determined he did. The defendant was sentenced pursuant to the non-conflicting mandate of Congress and in conformity with the Sentencing Guidelines. As to Count II, sentence was not imposed in order to preclude unlawfully cumulative punishment for the act charged in Count I, upon which sentence was imposed. The

aggregate sentence imposed, although hybrid and constructed with the limited tools available to the court, is for a very long time. It seems to the court that the five additional years sought by the United States would be "greater than necessary" to achieve the professed goals of Congress and the Sentencing Commission. The stay further gives deference to the concept of fairness implicit in the proposition that doubt should be resolved in favor of lenity when Congress sends mixed directions as to what should be imposed as punishment for the same act, namely seven to nine months on the one hand, and five years on the other.

## II.

On May 9, 1988, a jury found the defendant Vickie L. Singer guilty on Counts I, II, V, VI, and VII of the Amended Superseding Indictment. Counts I, V, and VII are to be sentenced under the Guidelines while Counts II and VI involve mandatory sentences pursuant to 18 U.S.C. § 924(c), and are thus exempt from the Guidelines. Sentences on these counts are to be added consecutively to any other sentence imposed.

Under the Guidelines the base level for Count I in this case is six, which is then increased by eleven to include specific offense characteristics, resulting in an offense level of seventeen for which the recommended sentence is twenty-four to thirty months. If the defendant is given credit for acceptance of responsibility, the adjusted offense level is fifteen and the recommended sentence is eighteen to twenty-four months.[10] Under the Guidelines Count V has a base level of eight and a recommended sentence of eight months, but if the defendant is given credit for acceptance of responsibility the base level is six and the recommended sentence zero to six months. Count VII has a base level of twelve for which the sentence is ten to sixteen months, and a base level of ten with a six to twelve-month sentence if the defendant is given credit for the acceptance

of responsibility. Of these three counts, Count I is the controlling count for the purpose of computing the sentence under the Guidelines. The court has determined that the evidence supports a finding of acceptance of responsibility by the defendant. The recommended sentence for Counts I, V, and VII is thus eighteen to twenty-four months.

At the original sentencing the defendant was sentenced to five years along with a period of probation of five years. At the resentencing on April 20, 1989, the court departed downward from the recommended sentence on Count I and sentenced the defendant to one month plus two years of supervised release. The court stayed the imposition of sentence as to Count II for the reasons expressed in section I of this opinion, and imposed a sentence of five years on Count VI. On Counts V and VII the court departed downward from the recommended sentence and imposed a sentence of one month on each, to run concurrently with that imposed on Count I.

 Under 18 U.S.C. § 3553(b), a sentencing court may depart from the sentence recommended under the Guidelines if the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *See also* Guidelines, section 5K2.0. The Guidelines provide that "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Guidelines, chapter 1, Part A4.(b). In deciding whether to depart, the sentencing court is to consider the Guidelines and the underlying goals mentioned above. After fully considering the circumstances of this case, the nature of the offense, and the goals and policies of the Guidelines, the court finds that this particular case warrants a departure from the Guidelines.

---

**10.** The presentence report suggested that the defendant had admitted her involvement and reduced the combined offense level by two points.

In order to give the sentencing court discretion to take a unique situation into account, the Commission purposely did not list all factors that a court can consider in determining whether or not to depart. *United States v. Ryan*, 866 F.2d 604, 607 (3rd Cir.1989)[11]. While it is clear that the Commission considered the use of 924(c) counts, it appears to the court that a factor not considered is the "stacking" or multiplying of these counts in a charging document. According to the United States Attorney, the aggregate of the terms of sentence to be imposed on the defendant is from eleven and one-half years to twelve and one-half years, of which only one and one-half to two and one-half years is for the underlying substantive offenses. Ten years would be imposed for companion non-Guidelines offenses. The disparity in this case is even more dramatic than that relating to defendant Addam Swapp. In this case, if one factors in the use of an explosive in calculating the Guidelines sentence for Count I, the total sentence (factoring in as well an acceptance of responsibility) would be twenty-four to thirty months. Without this factor, the Guidelines sentence would be eighteen to twenty-four months. In addition to Count II, the prosecution charged the defendant with another offense, with a non-Guidelines mandatory sentence of five years.[12] Count V has a recommended sentence of zero to six months whereas the companion count, Count VI, requires the five-year sentence. By the prosecutor electing to charge the 924(c) counts, a convicted defendant faces a sentence of eleven and one-half to twelve and one-half years, ten of them mandatory, instead of two to two and one-half years. This is simply too much under the peculiar circumstances of this case, especially when one considers the period of time mandated by the Guidelines, and the conduct of the defendant.

The evidence for Count I, the primary underlying count, shows that the defendant was not at the site of the crime, and that her significant culpable act was in allowing a younger member of her family to accompany her son-in-law on his quest to destroy the building. She also prayed to a Supreme Being to be watchful. On Counts V and VI the defendant did not herself use a deadly weapon but was convicted of aiding and abetting others. Finally, as previously mentioned in regard to defendant Addam Swapp, the context in which the acts took place is grounded in Utah's unique cultural history, a context obviously not contemplated by the Commission. Considering then the conduct of the defendant, the unique context of the case and the objectives of the Guidelines, the court finds that an increase of the defendant's sentence from the mandatory five years imposed at the original sentencing—and reimposed at re-sentencing—to twelve and one-half years, as suggested by the United States, serves no social purpose, and would in fact vitiate the goals set forth in the Guidelines and contradict common notions of justice and fairness. Thus the "downward departure" as to these offenses where court power exists seems to be justified under the peculiar circumstances of this case. As set forth in the court's earlier *en banc* opinion, this grandmother with a unique personal history and unusual faith in a determined son-in-law is not a mafioso, and treating her as one serves no purpose at all. 695 F.Supp. at 1150.

### III.

The defendants Jonathan Swapp and John Timothy Singer were found guilty on Counts III, IV, V, and VI. Counts III and V are sentenced under the Guidelines while Counts IV and VI involve 18 U.S.C. § 924(c) and are thus exempt. The United States Attorney stated that the base offense level on Count III for both defen-

---

11. In determining whether the sentencing court can depart the Third Circuit noted: "[T]he sentencing court has been given a good deal of discretion in deciding whether to depart from the guidelines, in part because the Commission seeks to monitor such departures and, over time, create more accurate guidelines." 866 F.2d at 609.

12. The defendant was also charged with Counts III and IV, of which Count IV is another 18 U.S.C. § 924(c) charge, but she was acquitted on these counts.

dants was twenty, which when increased three points to reflect a victim-related adjustment results in an adjusted offense level of twenty-three. Count V has a base level of fifteen, which is increased by two for more than minimal planning and by three for an official victim, resulting in an adjusted offense level of twenty. Because it has the higher offense level and a longer sentence, Count III is the controlling count for purposes of sentencing. The court has determined that there has been an acceptance of responsibility by both defendants, and the offense level for Count III is accordingly reduced to twenty-one. The recommended sentence for this offense level is thirty-seven to forty-seven months. When adjusted for acceptance of responsibility the offense level for Count V is eighteen, resulting in a recommended sentence of twenty-seven to thirty-one months, which is subsumed by the sentence imposed on Count III. Counts IV and VI each carry a mandatory sentence of five years to be served consecutively with any other sentence imposed.

At the original sentencing in September, 1988, the court sentenced defendants Jonathan Swapp and John Timothy Singer to a period of five years on Count IV and to a period of five years on Count VI to run consecutively with that imposed on Count IV. The court stayed the imposition of sentence on Counts III and V for both defendants and placed each defendant on probation for a period of five years. At the re-sentencing the Court sentenced Jonathan Swapp and John Timothy Singer to five years on Count IV and to five years on Count VI, to run consecutively. On sentencing defendant John Timothy Singer on Counts III and V, the court departed downward from the Guidelines to zero and imposed a term of three years supervised release [13]. On sentencing defendant Jona-

than Swapp the court departed downward from the Guidelines and sentenced the defendant to one month imprisonment on Counts III and V, to run concurrently with one another, and imposed supervised release for a period of three years.

In sentencing "The court should impose a sentence sufficient but not greater than necessary to comply with the statutory purposes of sentencing." Guidelines, Chapter five, *Introductory Commentary*. At the same time, for reasons the Commission thought appropriate but the merit of which escapes this court, the Guidelines state that factors such as age, education and vocational skills, mental and emotional conditions, physical condition, family ties and responsibilities, and community ties are *not* ordinarily relevant in determining whether a sentence should fall outside the Guidelines. At the re-sentencing of defendant John Timothy Singer the United States Attorney stated: "We feel that this might be a case where the uniqueness of this particular defendant's situation, when taken in the totality, may indeed justify some departure downward." Transcript of Re-Sentencing of John Timothy Singer at 8 (April 20, 1989). The court finds that the unique context of the case and the unique motivations of the defendants justifies consideration of those contextual factors that the Commission says should be excluded. This is no ordinary situation. In reviewing other cases in which departure has been upheld,[14] the court finds that the case at bar is substantially different from any other situation in which departure has been upheld and from any situation contemplated by the Commission. The defendant Jonathan Swapp has no previous criminal history and was not motivated by the usual factors of avarice, power, or greed. This is true as well of defendant John Timothy Singer. In addressing this issue, the de-

---

**13.** The Guidelines call for a period of three years of supervised release but counsel for the defendant noted that it was meaningless in that after completing his federal term of imprisonment the defendant faces a prison sentence in state court of at least nine months.

**14.** *United States v. Otero,* 868 F.2d 1412 (5th Cir.1989); *United States v. Ryan,* 866 F.2d 604 (3rd. Cir.1989); *United States v. Guerrero,* 863 F.2d 245 (2d Cir.1988); *United States v. Correa-Vargas,* 860 F.2d 35 (2d. Cir.1988).

fense counsel compared Mr. Singer to someone living one hundred years ago in terms of his background and education[15].

The court agrees with the United States Attorney and with counsel for the defendant that the situation warrants a departure from the Guidelines.[16] While the physical condition of the defendant is not usually relevant, it is in the case of Mr. Singer who has been a paraplegic since the age of seventeen with very minimal physical or mental therapy provided. In addition, the court finds as a factor warranting departure the extreme emotional, physical, and social dependence of the defendant on a family which, for various reasons, was culturally and socially isolated and, in the opinion of the court, seriously deprived.

For these reasons, and in view of the sentence aggregate resulting from consecutive mandatory minimum counts, a process not contemplated by the Commission, and in view of the unique historical setting of the case, the court departs from the Guidelines as to defendants John Timothy Singer and Jonathan Swapp.

### IV.

Sentencing by the numbers is a unique experience for one called upon to "judge." The exercise is long, involved, complex, and is somewhat akin to filling out schedules as a procedure for demonstrating an accounting problem. It brings to mind the observation that one should be unconcerned when computers begin to think like men, but that one should be greatly concerned when men begin to think like computers.

Calculation is a function far different than judgment—a distinction which has

great consequences for the whole social structure.

**15.** He pointed out the intensely religious background of the defendant, and the fact that the defendant was taken from school at an early age and "taught" at home. He also mentioned the period the defendant lived confined at home, ending with his father being shot and killed while resisting arrest.

**16.** Having departed on these grounds the court need not address the defendant's additional argument for departing on Count III—that the Guidelines do not take into consideration the fact that the defendant was convicted of attempted second degree murder, the lesser included offense. The defendant points out that this is inconsistent with the treatment in the Guidelines of the substantive murder offense in which there is a twenty-three percent difference between the two degrees. The effect of taking into account this difference would lower the offense level for Count III to fifteen so that Count V would then be the controlling count.