920 F.2d 934
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William T. FRYE, Bobby Ray Brown, and Larry Lynn Rasar,
Defendants-Appellants.
 Nos. 89-6524, 89-6525 and 89-6526.
 United States Court of Appeals, Sixth Circuit.
 Dec. 14, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and ZATKOFF, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants William T. Frye ("Frye"), Bobby Ray Brown ("Brown"), and Larry Lynn Rasar ("Rasar") (collectively "appellants" or "defendants") appeal their sentences for armed bank robbery, forcing a bank employee to accompany them, and use of a firearm during a crime of violence. For the reasons set forth below, we AFFIRM the judgment of the district court.
 
 I.
 A.
 
 2
 On June 27, 1989, the federal grand jury for the Eastern District of Tennessee returned a three-count indictment against appellants. Count one charged the appellants with bank robbery involving assault of another with knives and a handgun, in violation of 18 U.S.C. Secs. 2113(a), (d), 2. Count two alleged abduction of one of the bank tellers in an attempt to avoid apprehension for the commission of the offense charged in count one, in violation of 18 U.S.C. Secs. 2113(e), 2. Count three charged Frye and Brown with carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. Sec. 924(c)(1).
 
 
 3
 Trial proceedings commenced on September 13, 1989. Each appellant pled guilty to all of the counts in his indictment.
 
 
 4
 The Probation Office prepared presentence reports for the appellants and submitted them to the court. Brown, Rasar, and Frye filed objections to their presentence reports on November 14, 22, and 28, 1989, respectively. Each appellant argued that the Probation Office had miscalculated their respective sentencing ranges under the Sentencing Guidelines ("Guidelines").
 
 
 5
 The district court conducted a sentencing hearing on November 28, 1989, at which time judgment was entered against the appellants. Frye was sentenced to 120-month term of imprisonment on count one, 120-month term of imprisonment on count two (served concurrently with count one), 60-month term of imprisonment on count three (served consecutively to counts one and two), and five years of supervised release. Brown was sentenced to 150-month term of imprisonment on count one, 150-month term of imprisonment on count two (served concurrently with count one), and 60-month term of imprisonment on count three (served consecutively to counts one and two). Rasar was sentenced to 120-month term of imprisonment on count one and 120-month term of imprisonment on count two to be served concurrently. Appellants filed timely notices of appeals.
 
 B.
 
 6
 On June 22, 1989, at approximately 4:00 p.m., appellants approached the Third National Bank, Dixie Lee Junction Branch, in Loudon County, Tennessee, in a gray 1976 Chevrolet Monte Carlo registered in Rasar's name. Frye and Brown entered the bank, while Rasar waited in the car. At the time, only two people were in the bank--tellers Deborah Johnson ("Johnson") and Faye Wilson ("Wilson").
 
 
 7
 Upon entering the bank, Frye and Brown walked up to the teller counter and conversed about a check. Both tellers heard this conversation. Johnson heard Frye ask Brown whether he had the gun. Johnson then saw Brown hold up a small black pistol.[2] After Brown put the pistol away, he walked quickly toward Johnson brandishing a butcher knife. Frye, brandishing a hunting knife, vaulted over the counter in front of Wilson, grabbed her around the neck, placed the point of the knife at her throat, and demanded money. While maintaining his hold around Wilson's neck, Frye used the hand in which he held his knife to open Wilson's teller drawer and take out a sum of money. He kept this money in his hand.
 
 
 8
 At knife-point, Johnson accompanied Brown to the supply room, where he told her to get a bank bag. Brown forced Johnson to fill the bank bag with money from the drive-up teller window; he assisted her in this process. Brown then ordered both women into the supply room.
 
 
 9
 Throughout the commission of this crime, both women pled with Frye and Brown not to hurt them. Wilson became so scared that she told Frye not to take the bait money--the money bags containing the dye packs and tear gas. Brown picked up a dye pack, mistakenly determined that it was a stack of money, and then placed it in the bank bag.
 
 
 10
 After Brown obtained the money, he told Johnson to get into the supply room. She complied and as Brown was closing the door, Johnson saw Frye drag Wilson out of the bank by her neck. Once inside the supply room, Johnson locked the door from the inside and waited for appellants to depart before calling the police.[3]
 
 
 11
 Meanwhile, outside the bank, Frye forced Wilson, at knife-point, into the front seat of the getaway car between himself and Rasar. Brown got into the back seat with the bank bag. According to Wilson, Rasar became very interested in learning how much money the two men had obtained. The appellants drove around Loudon County with Wilson--at one point they stopped to purchase beer and cigarettes which they consumed.
 
 
 12
 Sometime during this period, the dye pack exploded in the bank bag; appellants cursed and Frye again placed the knife blade at Wilson's throat. Brown then threw the bank bag out of the window--money, dye and all.
 
 
 13
 Rasar became angry and stated that Brown better not have thrown the money out. Rasar demanded to know how much money Frye and Brown had stolen from the bank. Frye showed Rasar the wad of money he had kept in his hand, which calmed Rasar.
 
 
 14
 At another point during appellants' trip, Rasar stopped at a market. Wilson begged him not to stop there because the proprietors knew her. When Rasar returned, appellants resumed their drive on the back roads of Loudon County. They began to threaten Wilson: Rasar told her that if she told on them, he would turn State's evidence, get a deal, get out early, find her, and she would be sorry that she ever laid eyes on him; and Brown stated they needed to get rid of her. Wilson turned around and asked what Brown meant. Frye told her to "shut up" and in effect asked her: "You think we're going to rape you, don't you?" Joint Appendix at 55.
 
 
 15
 At some point, Frye threw his hunting knife out of the car window. Wilson never saw what Brown did with either his butcher knife or his gun. After appellants had driven around Loudon County with Wilson for approximately forty-five minutes, they released her on a road and drove away.
 
 
 16
 Officer Allen Clemmer of the Lenoir City Police Department spotted the gray Monte Carlo in the Rambling Acres Trailer Park near his home. He recognized Rasar, whom he knew, as the driver. Rasar parked the car, Brown and Frye exited, and entered trailer No. 87.
 
 
 17
 When the Lenoir City Police Department and FBI arrived, they surrounded the trailer and ordered appellants to come out. Rasar and the trailer occupants exited. Frye and Brown remained in the trailer for several hours, but surrendered after the authorities acceded to their demand for more beer. Subsequent to appellants' arrest, a search of the trailer disclosed a portion of the bank money which was stuffed in a sock and hidden in a hole in the bathroom floor.
 
 
 18
 Although the FBI never recovered either the gun or the knives, they did recover the dye-stained money from the bank bag. In total, appellants stole $7,963.50 from the bank.
 
 
 19
 Appellants pled guilty to all of the counts on which they were charged in the indictment, and presentence reports were prepared for each appellant.
 
 C.
 1.
 
 20
 In preparing Frye's presentence report, the probation officer arrived at a guideline range of 121 to 151 months for counts one and two by: grouping counts one and two together; calculating a total offense level of 31;[4] and a criminal history category of II.
 
 
 21
 Frye filed his objections to the presentence report on November 28, 1989. He objected to: the two-level increase for a victim-related adjustment; and a two-level increase for obstruction of justice. Frye also objected to the probation officer's failure to assign a two-point reduction for his acceptance of responsibility for the crime. Therefore, Frye argued that the appropriate Guideline range was 63 to 78 months based on a total offense level of 25, rather than 31, with a criminal history II category.
 
 2.
 
 22
 Brown's probation officer also calculated his guideline range by: grouping counts one and two together to reach a total offense level of 31.[5] Combined with a criminal history IV category, the calculation resulted in a guideline range of 151 to 188 months. Pursuant to 18 U.S.C. Sec. 924(c)(1), the probation officer added the minimum mandatory five year consecutive sentence for count three.
 
 
 23
 Brown filed objections to his presentence report on November 14, 1989. He took issue with: the four-level increase for the use of a dangerous weapon (knife); and the two-level increase for restraining Jackson. Brown claimed the evidence showed that Johnson "went into a room on her own and locked the door behind her" (Joint Appendix at 95); therefore she was not physically restrained. Brown asserted that his activity in the crime should merge with his use and possession of a firearm in connection with the commission of a violent felony, as charged in count three of the indictment. Brown also objected to the probation officer's inclusion of three criminal history points that were assessed against him for an attempted theft that he was sentenced for on July 15, 1976. Brown maintained that he did not receive a three to four year sentence for that offense, therefore his criminal history category should be III. Thus, he argued that his correct guideline range for counts one and two should be 70 to 87 months.
 
 3.
 
 24
 Rasar's probation officer calculated his Guideline range by grouping counts one and two together for a total offense level of 31 and a criminal history III category, yielding a Guideline range of 108 to 135 months.
 
 
 25
 Rasar filed objections to his presentence report on November 22, 1989. Rasar argued that the probation officer erred in: applying a two-level victim-related upward adjustment; failing to give him a two-level decrease as a minor participant with a minimal role in the bank robbery; applying a two-level increase for obstruction of justice; failing to assign a two-level reduction for his acceptance of responsibility in the crime; assigning a four-level increase for his use of a dangerous weapon; and assigning a criminal history category level III in view of his numerous challenges to the probation officer's assessment of his criminal record.
 
 D.
 
 26
 At the November 28, 1989, sentencing hearing, both the court and the parties wrestled with the application of the Guidelines to the facts of this case. Each of the appellants urged a Guideline computation lower than that calculated by the probation office; appellants wanted the court to determine the appropriate Guideline range. The statutorily required minimum sentence for a violation of count two is ten years or 120 months. Because the maximum sentence computed by each appellant in his calculation of counts one and two was lower than the statutory required minimum sentence, the sentencing court considered their arguments meritless.
 
 
 27
 The court sentenced Frye to 120 months on counts one and two, and Brown to 150 months on the same counts. These sentences met the statutory minimum, but constituted a one-month downward departure from the appropriate Guideline range as recommended by the probation department. The court sentenced Rasar to 120 months on counts one and two, which was within the applicable Guideline range for him and constituted the statutory minimum as required for count two.
 
 III.
 
 28
 This case is before the court for review of the sentencing court's actions arising under the Sentencing Reform Act of 1984. Pub.L.No. 98-473, 98 Stat.1987 (codified as amended in scattered sections of U.S.C. as described at 18 U.S.C. 3551 notes). Frye and Brown appeal the sentencing court's departure from the Guidelines.
 
 
 29
 In United States v. Christoph, 904 F.2d 1036 (6th Cir.1990), we held:
 
 
 30
 Under the Sentencing Reform Act of 1984, appellate review of a district court's departure from the Guidelines is limited. 18 U.S.C. Sec. 3742(e). A sentence departing from the Guidelines should be affirmed unless 'unreasonable.' In determining whether a departure is unreasonable, we consider whether 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by this Sentencing Commission in formulating the Guidelines....
 
 
 31
 Factual findings of the district court are given deference and will stand unless clearly erroneous. Also, a reviewing court must 'give due deference to the district court's application of the guidelines to the facts.'
 
 
 32
 Id. at 6 (citations omitted). In United States v. Rodriguez, 882 F.2d 1059 (6th Cir.), cert. denied 110 S.Ct. 1114 (1989), we also elaborated on the process to be used in reviewing an upward departure:
 
 
 33
 First, we assay the circumstances relied on by the district court in determining that the case is sufficiently 'unusual' to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.
 
 
 34
 Second, we determine whether the circumstances, if conceptually proper actually exist in the particular case. That assessment involves fact finding and the trier's determinations may be set aside only for clear error.
 
 
 35
 Third, once we have assured ourselves that the sentencing court described circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.
 
 
 36
 Id. at 1067 (quoting United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.1989)).
 
 A.
 
 37
 If the sentencing court departed from the Guidelines, it was a downward, not an upward, departure. Frye's calculation of his sentence under the Guidelines is less than the probation recommendation and less than the statutory minimum. The Guidelines clearly and appropriately incorporate the statutory minimum. U.S.S.G. Sec. 5G1.1.
 
 
 38
 Frye argues that the United States Sentencing Commission's (the "Commission") retention of the mandatory minimum sentence violates his right to substantive and procedural due process. He further contends that the imposition of a mandatory minimum sentence greater than any given sentence mandated by the Guidelines also violates his substantive and procedural due process rights.
 
 B.
 
 39
 We have held that Congress properly delegated the authority to fix sentence guidelines to the Commission. See United States v. Jacobs, 877 F.2d 460, 462 (6th Cir.1989). As part of this delegation, Congress directed the Commission to establish in its Guidelines a sentencing range consistent with all pertinent provisions of 28 U.S.C. Sec. 994(b)(1). Consistent with these responsibilities, the Commission addressed several statutorily required minimum sentences by promulgating Section 5G1.1(b) which provides: "If application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the Guideline sentence." This section recognizes a deference to Congress' power to legislate specific minimums for specific offenses.
 
 
 40
 We have upheld the operation of Section 5G1.1(b). United States v. Taylor, 882 F.2d 1018, 1032 (6th Cir.1989). Based on the above, the Commission's retention of mandatory minimum sentences by virtue of the promulgation of Section 5G1.1(b) does not violate Frye's substantive or procedural due process rights, and constitutes a valid application of the Commission's authority as delegated to it by Congress. Since statutory minimums are incorporated into the Guidelines, a sentence at the minimum, even if greater than the range that would otherwise be computed, would be appropriate under the Guidelines.
 
 C.
 
 41
 Frye also maintains that the disparity between the "non-Guideline" sentence he received and the sentence he should have received under the Guidelines constituted cruel and unusual punishment.
 
 
 42
 Relying on United States v. Frank, 864 F.2d 992 (3rd Cir.1988), Frye contends that his fifth and eighth amendment rights have been violated. Frye admits that Frank never reached the eighth amendment question. Nevertheless, he argues that the difference between the Guidelines sentence and the preexisting mandatory minimum sentence in the present case is so disproportionate that it rises to the level of cruel and unusual punishment contemplated by the court in Frank. The Third Circuit merely entertained the possibility that a punishment under the Guidelines could be so disproportionate to the crime as to be an eighth amendment violation. It did not discuss disparity between pre-Guideline and post-Guideline sentences. Id. at 1009. Thus the argument that the sentence violated the eighth amendment is meritless.
 
 
 43
 In Frank, the defendant argued that by circumscribing the sentencing court's discretion, the Sentencing Reform Act and the Guidelines violate substantive due process, because there is a federal substantive liberty interest in an individualized determination of an appropriate sentence. The Third Circuit rejected this argument as: (1) the Guideline sentences move towards proportionality in sentencing; and (2) a substantive liberty interest in individualized treatment in sentencing would be inconsistent with theories of retribution and deterrence. Id. at 1009-10.
 
 
 44
 This court has considered the Frank analysis in connection with attacks on the Guidelines and due process rights. In United States v. Allen, 873 F.2d 963 (6th Cir.1989), we held:
 
 
 45
 The Constitution does not require individualized sentences. Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses. If Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the Guidelines.
 
 
 46
 Id. Given the above, there is no justifiable basis for alleging a due process violation in this case.
 
 D.
 
 47
 Frye also argues that his due process rights were violated because the sentencing court failed to make a determination as to his applicable sentencing range. The sentencing court, however, not only made a finding rejecting Frye's computations, but also adopted the Guideline range as contained in the presentence report and made a downward departure.
 
 
 48
 Title 18 of the United States Code Section 3553(c) requires that the sentencing court state for the record its reasons for imposing a particular sentence. If the sentence imposed is below the Guideline range, the court must state its reasons for the departure. 18 U.S.C. Sec. 3553(c) In United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied 109 S.Ct. 3227 (1989) we addressed what constituted sufficient reasons for imposing a sentence different from that prescribed in the Guidelines:
 
 
 49
 The Act required the court to state 'the specific reasons' for imposing a sentence different from that described in the guidelines. 18 U.S.C. Sec. 3553(c). While Congress was not precise as to the form this would take, a short clear written statement or a reasoned statement from the bench will suffice. The Act then authorizes only limited appellate review of the sentence. 18 U.S.C. Sec. 3742(a), (b).
 
 
 50
 Id. at 47-48.
 
 
 51
 Two sentencing calculations were discussed; one by appellants and one by the probation department. Frye's computations for counts one and two, 63 to 78 months, were lower than the statutory required minimum sentence; therefore, the court properly determined that Section 5G1.1(b) rendered his computations irrelevant.[6]
 
 
 52
 In sentencing Frye, the court noted that a sentence at the low end of the Guideline range was appropriate. The court specifically indicated that it was sentencing Frye pursuant to the Guidelines:
 
 
 53
 THE COURT: I think that the sentence in both cases reflects the seriousness of the offense, as well as any aggravating or mitigating circumstances that have been taken into consideration by the Sentencing Guidelines. I believe that the sentence at the lower end of the Guideline range in both cases followed by a five year mandatory second consecutive sentence provides an adequate punishment for these crimes.
 
 
 54
 Joint Appendix at 113 (Sentencing Transcript at 54). Thus, the record indicates that the court adopted the probation department's, rather than appellant's, calculation. In fact, however, in applying the statutory minimum sentence, the sentence imposed fell one month below the Guideline range implicitly adopted by the trial court.
 
 
 55
 The sentencing court's reasoning apparently went as follows. There are two proposed calculations, one by the defendant and one by the probation department. The minimums are incorporated into the Guidelines, therefore the court cannot sentence defendant to any time period less than the minimum. Since the top of defendant's proposed range is below the minimum Guideline range, defendant's proposed range is irrelevant. The court, therefore, used the probation department's recommendation, but determined that the circumstances require a sentence at the lower end of the range. The court thus applied the statutory minimum which is in the lower range. (Although, in fact, the statutory minimum fell one month below the Guideline range)
 
 
 56
 This logic is not completely correct in finding the appellant's calculations completely irrelevant. If the sentencing court had found that according to the facts in the case, defendant's calculations were the correct application of the factors relevant to the sentencing formula, the sentencing court would have had one possible sentence--the statutory minimum. This is explicitly required by section 5G1.1b.
 
 
 57
 But the sentencing court here did not stop at finding that appellants' proposed calculation was not applicable. It went on to find that it was sentencing at the lower end of the guideline range, indicating that it had not only rejected appellants' range, but also had adopted the probation department's range. There was no other range discussed to which the court could have been referring. Although the fact that the minimum was actually one month below the range proposed by probation might argue for the proposition that the court had not accepted probation's recommendation, we do not find that reasoning persuasive. The sentencing court's reference to "the lower end of the Guideline range" clearly indicates that the court was considering a range under Sentencing Guideline calculations and there was no other range discussed about which the sentencing court could have been referring.
 
 
 58
 While the sentencing court did not provide adequate reasoning for a departure from the guideline range, we deem such a downward departure of one month in this case de minimis and not sufficient to warrant remand.[7]
 
 IV.
 
 59
 Brown contends that the sentencing court erred by imposing a sentence as to counts one and two which included a four-level adjustment for Brown's use of a knife, as well as imposing an additional five year consecutive sentence under count three for his use of a gun in violation of 18 U.S.C. Sec. 924(c). Brown argues that the court erred in counting the use of a weapon both in a count for weapons possession and as an aggravating factor causing enhancement of his sentence on the underlying crime, bank robbery.
 
 
 60
 Because he used a firearm in connection with the bank robbery, Brown was charged with and pled guilty to a violation of 18 U.S.C. Sec. 924(c)(1) (count three). When the Guidelines were applied, Section 2K2.4, combined with the mandate of the statute itself, directed that the sentence under count three be consecutive to any other term of imprisonment imposed by virtue of conviction for counts one and two.
 
 
 61
 Brown was also charged with and pled guilty to violations of 18 U.S.C. Secs. 2113(a), (d), 2 (count one) and 18 U.S.C. Secs. 2113(e), 2 (count two) because he committed the bank robbery, as well as aided and abetted Frye in his acts. Because of the aiding and abetting count, when the Guidelines were applied to the bank robbery and the abduction, Frye's conduct became a factor in Brown's adjusted base offense level. The presentence report reflects a four-level increase in Brown's adjusted base offense level based upon Frye's use of his knife against Wilson. Therefore, the government contends that Brown was not assigned an upward adjustment based upon his use of a knife against Johnson; instead, he was assigned an upward adjustment because of Frye's use of a knife against Wilson.[8] This action by the probation office was appropriate even though there was no conspiracy count in the indictment. The Guidelines sanction considering a co-defendant's actions when computing a defendant's sentence. See U.S.S.G. Sec. 1B1.3(a)(1) which includes as conduct relevant for sentencing:
 
 
 62
 [A]ll acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense....
 
 
 63
 "Conduct for which the defendant would be otherwise accountable" includes conduct "in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant" in the case of criminal activity "undertaken in concert with others, whether or not charged as a conspiracy...." Application Note 1 to section 1B1.3, as amended effective November 1, 1989. Because the amendment was to "clarify" the Guidelines and commentary, and not intended to make any substantive changes, we may consider the amended language of Application Note 1 to section 1B1.3 even though it was not effective at the time of the commission of the offense charged. U.S. Sentencing Comm'n, Guidelines Manual, app. C, at C. 43 (Nov. 1989); United States v. Aguilera-Zapata, 901 F.2d 1209, 1213 (5th Cir.1990). See also 2B3.1(b)(2)(B) which makes use of a firearm an aggravating factor but which does not specify whether that use must be by defendant or can be by another participant.
 
 
 64
 The briefs and the record below on this point are confusing and indicate that the sentencing court had some difficulty with this matter. In the discussion between the court and counsel, all parties viewed Brown as receiving a four-level increase for using his knife, and under Section 924(c) he received five years for a gun. We hold that since Brown received an enhancement for Frye's possession of a knife as well as his possession of a gun, the sentencing court's action was proper.
 
 
 65
 Brown relies on United States v. Swapp, 719 F.Supp. 1015 (D.Utah 1989) for the proposition that he should not receive an upward adjustment. In Swapp, the defendants were convicted of offenses relating to bombing a Mormon church. The court held that sentencing the defendant for both knowingly using and aiding and abetting use of a deadly and dangerous weapon and device, where the defendant was also convicted of knowingly and maliciously damaging and attempting to damage a church building by means of an explosive, would constitute unlawful double punishment. Id. at 1022. Swapp is distinguishable as the court was dealing with double counting involving one explosive device and two separate counts arising from the use of the same explosive device. After increasing count one for the explosive device, the sentencing court refused to increase count two for the same explosive device. Here, however, the sentencing court was not dealing with one weapon counted twice, but with two weapons wielded in a different manner and at different times.
 
 V.
 
 66
 Rasar contends that the sentencing court erred in sentencing him as it failed to consider the doctrine of merger as it pertains to count one. We find Rasar's claim meritless.
 
 
 67
 Prior to the advent of the Guidelines, we followed the "merger of sentences" approach under the Bank Robbery Act, 18 U.S.C. Sec. 2113, whereby multiple convictions under the act were treated as creating separate offenses which would permit separate convictions, but not multiple sentences. Bryan v. United States, 721 F.2d 572, 575 (6th Cir.) cert. denied 465 U.S. 1038 (1983). Under this doctrine, multiple sentences were vacated, but multiple convictions under the Bank Robbery Act were not. United States v. Hunter, 538 F.2d 1239, 1240 (6th Cir.1976).
 
 
 68
 With the advent of the Guidelines, the "merger of sentences" approach was uniformly adopted as standard practice in all cases involving multiple counts. Chapter 3 Part D of the Guidelines addresses the procedure for treating multiple offenses for sentencing purposes. Section 3D1.2 is the procedure developed under the Guidelines to group closely related counts.
 
 
 69
 Rasar's presentence report reflects that counts one and two were grouped as a closely related count pursuant to Section 3D1.2. Section 2B3.1(a) was the appropriate subsection to determine Rasar's base offense level for counts one and two. A combined adjusted base offense level was derived as to both counts. Therefore, in utilizing the Guidelines, Rasar received one sentence of imprisonment for two convictions arising under the Bank Robbery Act. Therefore, the Guidelines have adopted the "merger of the sentences" doctrine pursuant to Chapter three Part D of the Guidelines and no error has occurred.[9]
 
 
 70
 Rasar also argues that the sentencing court erred by failing to make findings of fact with regard to his Guideline computations. This argument must fail since in applying the Guidelines, the court determined that 120 months imprisonment was within the mid-range of the applicable Guideline. The court made sufficient a finding of the appropriate range to determine that the mandatory minimum was in the middle of that range. The court, therefore, by logical necessity, made a finding of the appropriate sentencing range.
 
 VI.
 
 71
 This case is primarily controlled by the statutory mandatory minimum for counts one and two of the indictment. Appellants argue for sentences below the statutory mandatory minimum. Since the Guidelines incorporate the statutory provisions pertaining to minimum sentences for specified crimes, we uphold the sentences imposed by the district court. Although the sentencing court made a one month downward departure in sentencing Frye and Brown, these departures are de minimis, and do not warrant remanding the case. The Guidelines provide for consideration of the presence of a weapon in the commission of a crime, without regard to who possesses it and do not require that elements considered in sentencing be included in the indictment. We, therefore, hold that it is appropriate to consider the possession of weapons by the other participants in the robbery in determining the sentence for each appellant.
 
 
 72
 For the foregoing reasons, we AFFIRM the judgment of the Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 In the briefs filed for Brown and Rasar, both appellants contend that Brown displayed the pistol and then placed it back in his trousers
 
 
 [3]
 Shortly thereafter, the Sheriff's Office and FBI responded; they broadcast an all-points bulletin on the gray Monte Carlo
 
 
 [4]
 This was calculated by adding: bank robbery (counts 1 and 2), 18; amount stolen $7,963.5, 1; dangerous weapon--knife, 4; abduction of teller Wilson, 4; victim-related adjustments, 2; and obstruction adjustment, 2. (Appellee's brief at 3)
 
 
 [5]
 The calculation was the same as described for Frye, supra note 3. (Appellees' brief at 4, Appellant Brown's brief at 3)
 
 
 [6]
 The probation department calculated a sentence of 121 to 151 months
 
 
 [7]
 The government does not seek remand for this departure. Appellee's brief at 35
 
 
 [8]
 The same holds true for Rasar. In calculating his Guideline range, the presentence report calculated an upward adjustment for Rasar based on Frye's use of a knife against Wilson
 
 
 [9]
 Like Frye, Rasar also argues that the sentencing court erred in applying Section 5G1.1(b) to the statute under which he was sentenced, because it resulted in a sentence greater than he would be given under the Guidelines. The same rationale raised with Frye apply here. Section 5G1.1(b) adopted rather than displaced all statutory minimum sentences; therefore Rasar's argument, like Frye's, fails