**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan NUNO–HUIZAR,**
**Defendant–Appellant.**

**No. 88–5192.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1988.

Decided Dec. 28, 1988.

Linda R. Navarro, Verna Wefald, Federal Public Defender of San Diego, Inc., San Diego, Cal., for defendant-appellant.

---

D. Thomas Ferraro, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FARRIS and WIGGINS, Circuit Judges, and CROCKER,* Senior District Judge.

PER CURIAM:

Juan Nuno–Huizar appeals his sentence of 2 years imprisonment and two years of supervised release. He argues that the prison term should not have exceeded 7 months, the maximum period of imprisonment recommended by the probation officer as computed by application of the Sentencing Guidelines of the Sentencing Reform Act of 1984. He also argues that the entire sentence is defective because the trial court relied on the supervised release provision of the Sentencing Reform Act which we have since held to be unconstitutional.

Nuno, one of 13 defendants, was named in all six counts of an indictment charging conspiracy to harbor and transport illegal aliens (count one) and transportation of illegal aliens (counts two through six). On March 21, 1988, Nuno pled guilty to count two, and on May 23, 1988, was afforded an opportunity for a hearing on the presentence report, but presented no evidence to contradict the facts set forth in the report. A sentence of two years imprisonment with two years supervised release was pronounced. The remaining counts were dismissed on motion of the government. This expedited appeal followed.

In October, 1987, the Border Patrol Anti–Smuggling Unit began surveillance of Lindberg Field, San Diego, California, after complaints from the public about alien smuggling activities at that airport. A preliminary investigation revealed that large groups of suspected illegal aliens were being smuggled north from San Diego to Los Angeles, via American Airlines Flight 76, departing daily at 7:15 a.m. Further investigation disclosed a sophisticated scheme where the illegal aliens were first taken to various "drop houses" in the San Diego area after being smuggled into the United States. The defendants participated in the scheme by operating the "drop houses" or acting as lookouts, drivers, guides or ticket buyers. Drivers picked the aliens up from the "drop houses" and transported them to Lindberg Field. If the lookouts indicated it was safe, the "load car" dropped the aliens off, and the "guide" led the aliens to their flight and gave them their tickets. The aliens were met in Los Angeles by other smugglers. Occasionally the aliens were accompanied by one of the conspirators on the flight to Los Angeles. Loads of illegal aliens varied from 2 to 18 persons, and in several instances more than one load was taken to the airport on a particular date.

The investigation was concluded on December 3, 1987, when the defendants were arrested and search warrants were served on seven different residences used as "drop houses." Some of the residences contained firearms, large quantities of cash and money orders, as well as other evidence indicating involvement in alien smuggling.

By application of the Sentencing guidelines, the probation officer recommended that Nuno be sentenced to 7 months imprisonment which represented the upper limit of the applicable range of the sentence. The sentencing judge rejected that recommendation and imposed a sentence of 2 years imprisonment.

The district judge carefully set out his reasons for departure from the Guidelines, as required by 18 U.S.C. § 3553(c). He stated that the alien smuggling scheme was extremely well-organized and sophisticated, and moved large numbers of people with clockwork precision. He noted that the scheme was carried on over a period of time, and that the flight to Los Angeles from San Diego had become "practically a commuter flight to Los Angeles" for the

---

* The Honorable M.D. Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation.

movement of the aliens. He examined Nuno's "role in these events, the nature of the operation, the length of time it existed, [and] the number of aliens moved through it" in determining to depart from the guidelines, and in fixing the sentence imposed. He also stated, "I have given you a long explanation; but I wanted you to know, even at your age, why I am imposing a two-year sentence. I think you had a significant responsibility in these events."

The presentence report reflected that Nuno acted as a driver, ticket purchaser, and guide, and he travelled with the aliens to Los Angeles on at least three occasions. He was described as the "right hand man" to an organizer and leader of the smuggling scheme.

Nuno first argues that his sentence was improper to the extent that the two year prison term exceeded the maximum length of imprisonment prescribed under the Sentencing Guidelines. On August 23, 1988 a panel of this Court held the Sentencing Guidelines to be unconstitutional. *Gubiensio–Ortiz v. Kanahele,* 857 F.2d 1245 (8th Cir.1988). We are bound by that opinion. The Sentencing Guidelines therefore have no force or effect, and provide Nuno with no basis for attacking the length of his sentence. Nuno argues that the case should nonetheless be remanded, however, so that the district court can sentence him in light of the proper legal criteria. On the other hand, the government argues that a remand will serve no purpose. It claims that the two year sentence was proper, whether measured against the Sentencing Guidelines or against the law as it existed prior to the enactment of the Guidelines.

We need not reach the parties' arguments with respect to this issue, because the case must be remanded for an independent reason. In addition to the two-year prison term, the trial court's sentencing order provides for a two-year period of supervised release. In *United States v. Jackson,* 857 F.2d 1285 (9th Cir.1988), we held that the supervised release provision was not severable from the rest of the Sentencing Reform Act. We stated: "Severing the provision would leave in place two competing systems of post-custodial supervision—parole and probation under pre-SRA law and supervised release under the SRA. The simultaneous availability of both systems would be senseless." The length of the prison sentence in *Jackson,* as opposed to the provision for supervised release, was not subject to criticism on the ground that it resulted from the application of an unconstitutional law. The district court relied on the SRA in ordering supervised release, but specifically refused to rely on the Sentencing Guidelines in setting the defendant's prison term. We nonetheless concluded that the appropriate remedy was to vacate the sentencing order in its entirety and to remand for resentencing. *Id.*

We are also bound by our holding in *Jackson.* Even if the government is correct that a sentence to a term of imprisonment entered while the Guidelines were in effect can be affirmed as proper under pre-Guidelines law, we refuse to recast a sentence which includes a period of supervised release into the conventional language of incarceration, probation and parole. Nor is it proper to consider the propriety of the prison sentence apart from the trial court's decision to order two years of supervised release. We can only guess at what sentence the trial court might have entered had it known that supervised release was not an available option. Under *Jackson,* the appropriate course is to evaluate the sentencing order in its entirety. Because it provides for supervised release pursuant to 18 U.S.C. § 3583 the sentencing order in this case is defective. We therefore vacate Nuno–Huizar's sentence and remand for resentencing in light of *Gubiensio* and *Jackson.*

We commend the court for its complete record on sentencing. We would have affirmed but for our holding in *Gubiensio.*

VACATED and REMANDED.