**UNITED STATES of America**

v.

**RYAN, Jeremiah, Appellant.**

No. 88–3344.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Dec. 9, 1988.

Decided Jan. 26, 1989.

Carl K. Zolezzi, Asst. Federal Public Defender, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellant.

Hugh P. Mabe, III, U.S. Dept. of Justice, Office of U.S. Atty., Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.

Before GREENBERG, SCIRICA, and WEIS, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Jeremiah Ryan appeals his sentence of ten months imprisonment for possession of a controlled substance in violation of 21 U.S.C. § 844(a). He contends that the district court's departure from the applicable sentencing guideline was unreasonable. We will affirm.

In December, 1987, a one-count information was filed charging Ryan with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He pleaded not guilty and a jury trial ensued. Testimony at Ryan's trial established that on November 28, 1987, two police officers approached him while he was sitting on a wall with a brown paper bag in his lap. Ryan dropped the paper bag behind him when he saw the officers coming, and was arrested when the officers retrieved the bag and discovered cocaine base or "crack" inside.

The crack was packaged in 33 small plastic bags, each containing between .2 and .4 grams of the substance, for a total of 10.32 grams. The crack had a concentration of 90 percent by weight. One of the arresting officers testified that, based upon his experience in drug enforcement, the possession of 33 individual packages of crack would suggest that the drugs were not for personal use, but rather for distribution or sale. He further testified that each bag would sell for $25.

The jury acquitted Ryan of the charge of possession with intent to distribute, but found him guilty of the lesser included offense of simple possession of a controlled substance, in violation of 21 U.S.C. § 844(a).

At Ryan's sentencing, the district court, applying the sentencing guidelines to the post-November 1, 1987 offense, departed from the zero to six-month sentence prescribed by the applicable guideline,[1] stating that departure was warranted for three reasons: (1) the amount of drugs in Ryan's possession, more than 10 grams; (2) the purity of the drugs; and (3) the packaging of the drugs. The court indicated that it was appropriate to consider these factors, not addressed by the Sentencing Commission. The court sentenced Ryan to ten months imprisonment, followed by one year of supervised release, and imposed a $25 special assessment.

On appeal, Ryan maintains that the district court applied the correct sentencing

---

1. Sentencing guideline § 2D2.1 is applicable to unlawful possession of a controlled substance in violation of 21 U.S.C. § 844(a). Section 2D2.1(a)(2) provides for a base offense level of 6 "if the substance is cocaine, LSD or PCP." Where a defendant, like Ryan, has no criminal history, the sentencing table prescribes a zero to six month sentence for offenses with a base offense level 6. *See* sentencing guidelines at 5.2.

guideline but erred in departing from the guideline. Therefore, our review of Ryan's sentence is governed by 18 U.S.C. § 3742(d)(3), pursuant to which we must determine whether the sentence "outside the range of the applicable sentencing guideline" is "unreasonable." [2]

■ The Sentencing Reform Act authorizes departure from the sentence range prescribed by the guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).[3] Ryan argues that the Sentencing Commission *did* consider the factors underlying the district court's departure from the guidelines, and rejected their significance. He points out that the guidelines expressly include quantity of drugs as a relevant sentencing factor for many other drug related offenses,[4] and argues that the omission of drug quantity as a sentencing factor in simple possession cases evidences the Commission's implicit but purposeful rejection of its significance under statutory construction principles. He makes a similar argument with regard to the purity of drugs, noting that application note 8 to the guideline for trafficking in controlled substances provides that "unusually high purity may warrant an upward departure" and asserting that the absence of any similar instruction for simple possession cases is not without significance.[5] Ryan further maintains that the district court erred in considering the packaging of the drugs in departing from the sentencing guidelines, maintaining that, in effect, he was sentenced for a crime of which he had been acquitted, and claiming that the guidelines prohibit such an approach. Finally, Ryan asserts that departure from the sentencing guidelines is only warranted under "unusual" circumstances, and that the factors upon which the district court grounded its departure simply do not suffice to make this case an unusual one.

At various points throughout the sentencing guidelines, the drafters provided direction as to when departure from the guidelines is warranted.[6] In chapter one, Part A, 4(b) of the guidelines, the Commission noted that although, in principle, it could have prevented a court from using a particular factor as grounds for departure by specifying that the Commission had adequately considered it, it had declined to do so. The Commission explained that it intended sentencing courts to treat the initial set of guidelines "as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.

2. Section 3742(d) provides in pertinent part:
   (d) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence— ...
   (3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—
      (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title [18 U.S.C. § 3551 et. seq.]; and
      (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of § 3553(c)
   ...

3. Section 3553(b) further provides that "[i]n determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements and official commentary of the Sentencing Commission." Section 3553(b) read slightly differently before it was amended in 1987 by Pub.L. 100–182, which, among other things, added the sentence cited directly above.

Although the Government notes that Ryan's offense was committed in November, 1987 and maintains that the amendment to § 3553(b) is applicable to offenses committed after December 7, 1987, our disposition of this case would be the same under either version of the statute.

4. *See, e.g.,* sentencing guidelines §§ 2D1.1, 2D1.-2, 2D1.3.

5. Moreover, the guidelines indirectly incorporate the purity of various drugs into the determination of the applicable base offense level where the level is determined on the basis of drug quantity. For instance, a smaller quantity of cocaine base than of cocaine is required to render the same base offense level applicable to various drug-related offenses. *See* sentencing guidelines, drug quantity table and drug equivalency tables.

6. We apply the guidelines as they currently read. Changes since the offense took place do not affect the issues here presented.

When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." It continued that with a few specific exceptions, "the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case."

The Commission went on to explain:

The Commission has adopted this departure policy for two basic reasons. First is the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. The Commission also recognizes that in the initial set of guidelines it need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted.

Second, the Commission believes that despite the court's legal freedom to depart from the guidelines, they will not do so very often. This is because the guidelines, offense by offense, seek to take account of those factors that the Commission's sentencing data indicate make significant difference in sentencing at the present time....

The Commission then discussed three potential kinds of departure. The third kind of departure, the type involved here, is "unguided" departure. The Commission stated that unguided departure

may rest upon grounds referred to in Chapter 5, Part H [none of which are applicable here] or on grounds not mentioned in the guidelines.... The Commission recognizes that there may be

cases ... in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly unusual.

Further guidance is provided in the policy statement in § 5K2.0 of the guidelines, entitled "Grounds for Departure," which provides in part:

Circumstances that may warrant departure from the guidelines pursuant to [18 U.S.C. § 3553(b)] cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge. Similarly, the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (e.g., as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

... [A] factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.

To the extent that Ryan argues that the Commission's express references to quantity and purity of drugs in the context of other drug-related offenses indicate an intent to exclude these factors from consideration in sentencing for simple possession, the foregoing language from the guidelines suggests the contrary. Not only did the Commission indicate that a factor listed under one guideline may be relevant to sentencing under a different guideline making no reference to such factor,[7] but it

---

7. Ryan asserts that while the guidelines provide for departure where a factor is listed under one

guideline, but not the applicable guideline, as a "specific offense characteristic," quantity and

expressly stated that its failure to specifically reject various factors was designed to *permit* departure, not, as Ryan proposes, to foreclose it.

For similar reasons, the United States Court of Appeals for the Second Circuit rejected arguments nearly identical to those raised by Ryan. In *United States v. Correa–Vargas*, 860 F.2d 35 (2d Cir.1988), the defendant, after being caught with 20 kilos of 87 percent pure cocaine, pled guilty to a charge of using a communication facility in the commission of a drug offense in violation of 21 U.S.C. § 843(b). As in the instant case, the applicable sentencing guideline, § 2D1.6, made no reference to quantity of drugs, and the district court departed from the guideline on the basis of the quantity of drugs involved. Rejecting the defendant's arguments that such departure was unreasonable under principles of statutory interpretation, the court of appeals held:

> Based on the clear language of [§ 5K2.0], the district court is free to take quantity into account as an aggravating circumstance in sentencing telephone-count offenses even though it is not mentioned in Sentencing Guidelines § 2D1.6, but is a characteristic factor for other drug-related offenses. Appellant's conclusion that the Commission must

have rejected the factor purposefully is undermined by the Commission's own statements.

860 F.2d at 38. *Accord United States v. Guerrero*, 863 F.2d 245 (2d Cir., 1988).[8]

Ryan next argues that § 5K2.0 of the guidelines provides in part that "[h]arms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in § 1B1.3," and asserts that neither quality nor quantity, and certainly not packaging, is relevant to the offense of which he was convicted—simple possession. However, it is doubtful that this provision of the guidelines is even apposite. Although Ryan apparently equates "harms" with "factors," application note 3 to § 1B1.3 (which discusses the factors to be used in determining the applicable guideline range) specifically defines "harm" as "bodily injury, monetary loss, property damage and any resulting harm," none of which are involved in this case.[9]

Furthermore, § 1B1.4 of the guidelines, which deals with information used in imposing sentence, provides that "[i]n determining ... whether a departure from the guidelines is warranted, the court may con-

---

purity of drugs are not listed as specific offense characteristics under the various guidelines governing drug-related offenses, but instead are relevant in determining the base offense level. When the relevant language is viewed in context, however, we believe that the Commission could well have intended to permit departure where the relevant factor appears elsewhere in the guidelines yet does not happen to be classified as a specific offense characteristic.

8. The Government further notes that in its first "update" on guideline issues, dated May 5, 1988, the Commission addressed the following inquiry: "[i]f the offender is indicted for possession with intent to distribute, but is only convicted of simple possession, does the amount of drugs affect the sentence?" The Commission responded:

> The guideline section utilized to compute the guideline range must be determined by the offense of conviction (§ 1B1.2(a)). The simple possession guideline (§ 2D2.1) does not utilize the amount of drugs to determine the appropriate offense level. *Of course, the amount of drugs may be considered by the*

*court for the purposes of determining the appropriate sentence within the guideline range or for possible departure* (emphasis added).

Ryan argues that we may not consider this statement from the Commission because it is not part of the "sentencing guidelines, policy statements and official commentary of the Commission" under amended § 3553(b). The Government asserts that amended § 3553(b) is inapplicable here, *see supra* note 3. We note simply that our disposition of this case would be the same whether or not this statement is considered.

9. Moreover, the commentary to § 1B1.3 provides that "[c]onduct that is not formally charged *or is not an element of the offense of conviction* may enter into the determination of the applicable guideline sentencing range. The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined" (emphasis added). This provision lends further support for the district court's reliance upon the packaging of the drugs as grounds for departing from the guidelines.

sider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The commentary to this section specifies that "information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining whether and to what extent to depart from the guidelines." These provisions suggest to us that the district court did not act unreasonably in departing from the guidelines on the basis of the packaging of the drugs. Before the guidelines were promulgated, a court was permitted to consider evidence on counts of which a defendant was acquitted in sentencing the defendant. *See, e.g., United States v. Bernard,* 757 F.2d 1439, 1444 (4th Cir.1985); *see also United States ex rel. Goldberg v. Warden,* 622 F.2d 60 (3d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980). Despite Ryan's claim of error, the guidelines, as we read them, indicate that the Commission intended to permit sentencing courts to continue to consider such information in determining whether to depart from the applicable guideline. As the *Correa-Vargas* court noted, while the Commission has moved closer to a "charge offense" system, the system retains a number of "real offense" elements, and the guidelines indicate that departure may be warranted on the basis of conduct which is not an element of the offense of conviction. 860 F.2d at 38–39 (citing guidelines, chapter one, Part A, 4(a)).[10]

■ Finally, Ryan urges that the guidelines sanction departure only in unusual cases, and that his case cannot be so characterized. The foregoing quotations from the guidelines do lend some support to

Ryan's argument, suggesting at a number of points that departure is warranted only in unusual cases. *See* guidelines, chapter 1, part A, 4(b) and § 5K2.0, cited at length *supra.* They also suggest, however, that the sentencing court has been given a good deal of discretion in deciding whether to depart from the guidelines, in part because the Commission seeks to monitor such departures and, over time, create more accurate guidelines. Accordingly, there appears to be some inherent tension in the guidelines themselves as to the extent to which departure is permissible.

The Government contends in any event that this is an unusual case, arguing that "[t]he Sentencing Commission, in setting the offense level, undoubtedly expected that in a normal case a person convicted of simple possession of cocaine in any form would be in possession of a personal use quantity." While this may be true we feel there is another more compelling reason to regard this case as unusual. That is because of the particular drug involved here: crack. Significantly, Congress has recently recognized that cocaine base or crack is a particularly insidious and dangerous drug, and has amended 21 U.S.C. § 844(a) to penalize its possession severely.[11] This lends some support to a classification of this case as an "unusual" one in light of the quantity, purity and packaging of the particular drug involved. As noted earlier, the guideline applied in this case makes no explicit reference to cocaine base, but provides for a base offense level of six if the defendant was in possession of "cocaine, LSD or PCP." Thus, the district court's departure from the guideline might well be reasonable in view of the Commission's

---

**10.** In *Correa-Vargas,* the defendant was originally indicted on one count charging conspiracy to possess with intent to distribute in excess of five kilos of cocaine and a second count charging possession of the cocaine, but, as noted earlier, the government accepted a guilty plea to a one-count superseding information charging defendant with using a communication facility in the commission of a drug offense. The appellate court rejected defendant's assertion that the district court acted unreasonably in looking to factors extraneous to the offense of convic-

tion—the amount of drugs—in deciding to depart from the applicable guideline.

**11.** The amendment, part of the Anti–Drug Abuse Act of 1988, P.L. 100–690, Section 6371, provides for a five year mandatory minimum sentence for a first conviction for possession of more than 5 grams of a substance containing cocaine base. *See* 134 Cong.Rec. at H 11166 (daily ed. October 21, 1988). The floor debates indicate Congress' concern with the highly addictive nature of this affordable drug, and its increasing prevalence.

failure to take into account the unusual danger of crack in drafting the guidelines governing drug possession.

■ We do not, however, ground our holding exclusively upon the unusual circumstance of this case; here, as in many situations, there is really no way of knowing whether or not the Commission would view the circumstances of this case as "unusual." [12] *But see Correa–Vargas* (where defendant possessed 20 kilos of 87 percent pure cocaine, very large amount of drugs makes case sufficiently unusual to merit departure); and *United States v. Nuno–Huizar*, 863 F.2d 36 (9th Cir.1988) (where defendant, who pled guilty to transportation of illegal aliens, had been involved in sophisticated alien smuggling scheme including an airline flight which was "practically a commuter flight" for the movement of aliens, case sufficiently unusual to warrant departure).

Exercising plenary review, we have determined that a departure is legally permissible because the Commission did not take into account the aggravating circumstances in this case. Beyond that determination, we still must decide whether the given departure was reasonable. That involves at least two subissues: whether the factors relied on are appropriate; and whether the degree of departure was appropriate. We conclude, in light of the general language in the guidelines indicating that if departure is authorized, the district courts are entitled to exercise a substantial amount of discretion in determining whether to depart from the guidelines; the more specific language suggesting that particular factors relied on by the district court in this case may well have been viewed by the Commission as warranting departure; and the failure of the Commission to preclude departure on the grounds here relied upon, that the district court's departure from the guidelines in this case was not unreasonable. We will, therefore, affirm.

**12.** *Cf.* Alschuler, *Departures and Plea Agreements Under the Sentencing Guidelines,* 117 F.R. D. 459, 465 (1987) ("[a] judge cannot know what facts to regard as aggravating or mitigating when he or she does not know the Commission's view of the 'normal' [crime].")