895 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara MARTIN, Defendant-Appellant.
 No. 89-3127.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1990.
 
 Before WELLFORD, RALPH B. GUY, Jr. and BOGGS, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 In February 1988, the Columbus, Ohio police executed a search warrant at 834 Berkeley Road, where they seized approximately fifty grams of crack cocaine. One of the individuals inside of the house was Barbara Martin, the defendant, who had money in her possession that had been recorded in connection with a controlled purchase of crack. A review of documents seized from the premises indicated that Martin leased and maintained control of the house. It was also discovered that the house was used as a headquarters for the distribution and storage of crack cocaine.
 
 
 2
 Martin was indicted on three counts of possessing with the intent to distribute crack cocaine. Pursuant to a plea agreement, Martin pled guilty to one count of the indictment and the other counts against her were dismissed. She gave statements admitting her involvement in the crack house to a United States Probation Officer, who determined, after all adjustments, that Martin's conduct was at an offense level of sixteen with a criminal history category of III for guideline sentencing purposes. Pursuant to these determinations, the sentencing guidelines indicated that the appropriate sentence fell within the range of from 27 to 33 months. The district court sentenced the defendant to a term of five years imprisonment.
 
 
 3
 The district court, however, decided to depart from the sentencing guidelines, stating:
 
 
 4
 Well, what you did was indeed wrong and potentially quite harmful to the community. The facts of this case are that the defendant operated a crack house, that she provided the premises, she hired a salesperson, was actively involved in the distribution of cocaine, all of which is part of the plague that is affecting our nation in general and our city in particular, and the Court feels that the particular guideline applicable to this offense under the circumstances of this case does not sufficiently address the seriousness of the offense or the consequences of the offense, and the Court concludes that under 18 United States Code Section 3553(b) there are aggravating circumstances of a kind and degree not adequately taken into consideration in formulating the guidelines in this case.
 
 
 5
 The district court concluded that particularly under Sec. 5K2.14 of the guidelines an upward departure was "justified...."[1] The basis for the departure was that "public health or safety was significantly endangered," U.S.S.G. Sec. 5K2.14, "to a degree ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. Sec. 3553(b). The defendant contends that the district court's upward departure from the guidelines was improper and challenges the sentence imposed. The defendant claims that the district court's departure from the sentencing guidelines was unreasonable because the district court considered factors that were considered in the formulation of the guidelines and therefore do not provide a basis for departure. Specifically, the defendant contends that the district court could not consider her involvement in or as an organizer of the crack house to enhance her sentence.
 
 
 6
 An appellate court's review of a district court's decision to depart from the guidelines is limited in the Sentencing Reform Act:
 
 
 7
 (e) Consideration.--Upon review of the record, the court of appeals shall determine whether the sentence--
 
 
 8
 (1) was imposed in violation of law;
 
 
 9
 (2) was imposed as a result of an incorrect application of the sentencing guidelines;
 
 
 10
 (3) is outside the applicable guideline range, and is unreasonable, having regard for--
 
 
 11
 (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
 
 
 12
 (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
 
 
 13
 (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.
 
 
 14
 18 U.S.C. Sec. 3742(e). Subsection (e) also indicates that "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e); see also United States v. Mejia-Orosco, 867 F.2d 216, 219 (5th Cir.), cert. denied, 109 S.Ct. 3257 (1989); United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 109 S.Ct. 3227 (1989). The sentence imposed "outside the applicable guideline range" will be reversed only if it is unreasonable or if it is based upon erroneous application of the law. 18 U.S.C. Sec. 3742(e)(3).
 
 
 15
 "A departure from the guidelines will be affirmed if the district court offers 'acceptable reasons' for the departure and the departure is 'reasonable.' " United States v. Velasquez-Mercado, 872 F.2d 632, 635 (5th Cir.1989) (quoting Mejia-Orosco, 867 F.2d at 219). The First Circuit has adopted a three-step analysis to review a district court's departure from the Guidelines:
 
 
 16
 First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.
 
 
 17
 Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding in the trier's determination may be set aside only for clear error. See 18 U.S.C. Sec. 3742(d).
 
 
 18
 Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.
 
 
 19
 United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.1989); see also United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989) (adopting the three-step test announced in Diaz-Villafane ).
 
 
 20
 The district court based the upward departure upon a finding that crack cocaine is a dangerous drug and is a "plague" in our nation today. The judge also pointed out that the defendant operated the crack house, provided the premises, hired a salesperson, and was actively involved in the distribution of crack. While these activities are taken into account by the guidelines to the extent that there is an enhancement for "organizers" of crimes generally, U.S.S.G. Sec. 3B1. (a), we cannot be sure, based on the court's expressed reasoning, that the dangers to a community arising from the organization and operation of a crack house are not fully and adequately addressed by the guidelines. See United States v. Robinson, No. 88-4020 (6th Cir. Jan. __, 1990). It is appropriate, however, for the sentencing judge to take into account all relevant conduct, not just the conduct supporting a specific conviction. United States v. Ykema, 887 F.2d 697 (6th Cir.1989). This principle applies even where other counts have been dismissed in a plea agreement. See United States v. Smith, 887 F.2d 104 (6th Cir.1989).
 
 
 21
 In United States v. Ryan, 866 F.2d 604 (3rd Cir.1989), the court held that the presence of crack in a case was sufficient to label the case "unusual" for purposes of departure from the sentencing guidelines. The court stated:
 
 
 22
 [S]ignificantly, Congress has recently recognized that cocaine base or crack is a particularly insidious and dangerous drug, and has amended 21 U.S.C. Sec. 844(a) to penalize its possession severely. (footnote omitted). This lends some support to a classification of this case as an "unusual" one in light of the quantity, purity and packaging of the particular drug involved. As noted earlier, the guideline applied in this case makes no explicit reference to cocaine base, but provides for a base offense level of six if the defendant was in possession of "cocaine, LSD or PCP." Thus, the district court's departure from the guideline might well be reasonable in view of the Commission's failure to take into account the unusual danger of crack in drafting the guidelines governing drug possession.
 
 
 23
 Id. at 609-10.
 
 
 24
 We have held that it was not unreasonable for a district judge to take into account unusual quality and purity of cocaine in the sentencing process. United States v. Ford, No. 89-3205 (6th Cir. Dec. 5, 1989) (citing cases from other circuits as to permissible inferences from purity of cocaine involved (see n. 4)).
 
 
 25
 One who obtains quantities of crack cocaine and distributes it to others for resale or use presents a threat to public health and safety which was considered by the guidelines. One who organizes crack cocaine distribution through a residence, now known in general parlance as a "crack house," may offer a greater or unique danger to neighbors and to public health and safety in general, which was not adequately considered by the guidelines.[2] We are mindful, however, that departure should be found reasonable only in the atypical case, one which "falls outside the 'heartland'." See United States v. Williams, 891 F.2d 962 (1st Cir.1989). We do not necessarily read Sec. 5K2.14 to provide a broad exception to the sentencing guidelines based simply on the dangers of crack cocaine, despite its "particularly insidious" nature.
 
 
 26
 In light of the considerations and concerns herein expressed, we REMAND this case to the district court for further consideration as to whether this case is the atypical, unusual case that warrants departure from the guidelines. The district court should indicate why and how it determined that the circumstances of this particular case or the "seriousness of the offense" compel a departure because such circumstances were not adequately taken into account in "formulating the guidelines." See particularly Joan, Ryan, and Williams. In doing so, the district court should consider that the guidelines do provide a general adjustment for a defendant who is an organizer of a criminal venture.
 
 
 27
 Unlike United States v. Robinson, supra, this case does not involve an issue concerning Sec. 1B1.8 and defendant's plea agreement, and information secured from defendant. The government here did dismiss two counts of the indictment and did not file additional charges against Martin. The district court may consider the circumstances made known to it pertinent to the counts that were dismissed, and the plea agreement advised defendant that she was subject to a maximum sentence of twenty years. This sentence under 18 U.S.C. Sec. 3553 should take into reasonable account: "The nature and circumstances of the offense;" the "seriousness" of the offense; "adequate deterrence;" and protection of "the public from further crimes of the defendant." To warrant a departure, the sentence must be reasonable in assessing the "aggravating circumstance ... of a kind ... not adequately taken into consideration by the Sentencing Commission," and the district court must state the "reasons for its imposition of the particular sentence."
 
 
 28
 We REMAND for further consideration and explanation for the reasons indicated.
 
 
 29
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 30
 Since I believe that the district court's departure from the Sentencing Guidelines was improper, I would vacate the sentence imposed and remand for the imposition of a sentence within the guidelines.
 
 
 31
 When imposing a sentence outside the applicable range, the sentencing judge must state the specific reason for the departure. 18 U.S.C. Sec. 3553(c)(2). In this case, the judge gave only one reason for his decision to impose a longer sentence:
 
 
 32
 The Court concludes that pursuant to Section 5(k)(2) on the guidelines manual, departure upward in this case is justified, that in particular under Section 5(k)(2). 14, that there is a serious element of threat to public safety which exists by virtue of the operation of a crack house which is not adequately addressed by the sentencing guideline and which justifies an upward departure in this case, and the Court's judgment and sentence in this case will be a period of incarceration of five years.
 
 
 33
 (App. 18-19).
 
 
 34
 Since the above-quoted paragraph was the only specific reference made to the guidelines at the time of sentencing, the review of the sentence in this case must be limited to an examination of whether section 5K2.14 would allow the departure made in this case. I do not believe that this case implicates this section of the guidelines.
 
 
 35
 I think the reason for departure was candidly stated by the trial judge when he said that the "guideline applicable to this offense ... does not sufficiently address the seriousness of the offense...." (App. 19). It is clear to me that what the trial judge was saying was that, generically, the Commission had treated the offense of running a "crack house" too lightly. It was not this specific case that troubled the judge, but the sentencing range provided for the offense by the guidelines with which he disagreed.
 
 
 36
 The majority writes at length about the "plague" that crack houses visit upon our society and communities today, which I certainly do not dispute. However, the fact that this case involved a crack house does not automatically lead to the conclusion that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. Sec. 3553(b). Although the court attempts to explain how the circumstances of this case are "sufficiently" unusual "to warrant departure," United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.1989), none of the factors cited distinguishes this case from any other case involving the distribution of crack. Moreover, the court's opinion expands upon the reasons given by the district court to a great extent, encompassing factors to which the district court did not allude.
 
 
 37
 In addition, the majority's reliance on United States v. Ryan, 866 F.2d 604 (3d Cir.1989), is misplaced. In that case, the Third Circuit affirmed a departure based upon the quantity, purity, and packaging of the drug involved. The court did not cite section 5K2.14 as a justification for departure. In fact, the court recognized that "there is really no way of knowing whether or not the Commission would view the circumstances of this case as 'unusual.' " Id. at 610 (footnote omitted).
 
 
 38
 Although I share the trial judge's concerns, I view the discretion exercised here as the type that, in the interest of eliminating sentencing disparity, was removed from district judges by the Sentencing Reform Act. The only attempt by the trial judge to justify the enhancement by way of a specific reference to one of the enhancement factors listed in the guidelines was the reference to section 5K2.14. The kind of threat envisioned by section 5K2.14 is not that inherent in the offense itself. To read section 5K2.14 as did the trial judge would be to provide an exception that swallows the rule. All narcotic offenses and most crimes present a threat to public safety of one kind or another, and clearly the Commission was referring to a threat over and above that normally implicated by the commission of the offense.
 
 
 
 [1]
 Section 5K2.14 provides:
 Public Welfare (Policy Statement)
 If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense.
 
 
 [2]
 For example, the New York Times, in an article appearing on the front page, August 29, 1989, with a dateline from Columbus, Ohio, states:
 It was the 331st police raid on a crack house in this city of about 550,000 people in 16 months....
 ... in this city like others in the American heartland that have felt the new scourge of crack.... The Columbus citizens ... are becoming alarmed at the shattering destructiveness of crack....
 There are an estimated 200 crack houses still in operation in Columbus and the nearby smaller cities in Ohio.
 Here, the crack traffic is operated by a loose network of drug-running entrepreneurs in a relentless quest for new markets.... [H]ere, as in other urban areas, a far more insidious kind of consumer culture is spreading: the culture of the crack house.
 (Emphasis added). The article added that crack houses started in Columbus in about 1987.