UNITED STATES of America

v.

Edward Leigh HUNT, Jr.

Crim. No. 88–00185.

United States District Court,
E.D. Pennsylvania.

Sept. 7, 1990.

Michael M. Baylson, U.S. Atty., Frederick G. Herold, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Albert J. Raman, Philadelphia, Pa., for defendant.

## MEMORANDUM

BECHTLE, Chief Judge.

The defendant in this case pleaded guilty to one count of 18 U.S.C. § 659, charging him with interstate transportation of stolen funds. The circumstances are that the defendant, on January 20, 1988, while a part-time security guard for the Brooks Armored Car Company, stole $651,000.00 in cash from the armored car while his two co-workers, unaware of the defendant's act, were making a delivery at the PSFS bank at 12th and Market Street in Philadelphia, Pennsylvania. The defendant left the city immediately and was a fugitive for two years. On December 20, 1989, the defendant wrote a letter indicating that he was prepared to surrender on January 20, 1990, the second anniversary of the theft, at a particular location in Los Angeles, California, and presumably was prepared to admit to the commission of the crime and submit himself to sentencing for violation of statutes having to do with the theft. He surrendered as predicted and upon his return to Philadelphia entered into a plea bargain arrangement with the government with the assistance of his counsel, which included, among other things, his consent to take a polygraph test and provide truthful and full factual information to the government concerning the circumstances associated with the theft. The government agreed, by reason of the purported willingness of the defendant to fully cooperate, as well as his agreement to enter a plea of guilty, to stipulate to a finding that the defendant had "accepted responsibility," and accordingly would be entitled at the time of sentencing to a 2 point reduction in the Guideline Sentencing calculation for the offense. *See Guideline* § 3E1.1(a). The defendant pleaded guilty on April 2, 1990.

The presentence report sets forth certain undisputed facts concerning the defendant's background, which included a number of matters pertinent to the sentence. The report shows that the defendant was reared in a sound sociological and economic environment. His family setting was that of a successful and educated family intact, in communication with him, and providing all of his needs. He graduated from the University of Delaware in 1985 with a Bachelor's Decree in Psychology, and held a number of part-time jobs, including several jobs having to do with providing security services similar to that which he held at the time of the theft. There was a smattering of information provided by the defendant in his letter of December 20, 1989, that he had been involved in "gambling." His version of his conduct simply was that he had hoped, by stealing the $651,000.00 from the armored car, to quadruple the sum through his undisclosed gambling techniques. He stated that he planned to return the stolen money to Brooks, keeping the remainder for himself.

The first sign of trouble in the guilty plea agreement was after the plea had been taken and the defendant refused to be debriefed. This took the form of his refusal to answer a number of pertinent questions concerning the crime in the preparatory session to submitting to the polygraph examination which he had agreed to. Suffice it to say, no information has been furnished by the defendant concerning the crime other than fragmentary, rambling, vague, and conclusory statements, and opinions such as those provided at the sentencing hearing.

The Presentence Report sets forth the grounds upon which the calculation of the sentence was recommended by the Probation Department. The essence of the calculation is that the score begins with an offense level of 4 by reason of the nature of the offense (*see* § 2B1.1). This is then

elevated to a score of 14 because the amount in question was between $500,-000.00 and $1,000,000.00 (*see* § 2B1.1).[1] At this juncture the defendant believed that he was entitled to a 2 point reduction based upon his contention that he had accepted responsibility provided for in § 3E1.1. The government not only disagreed with that, but to the contrary, was of the view that there should be a 2 point increase because there had been more than minimal planning required. (*See* § 2B1.1(b)(4)). The government was also of the view that there should be another 2 point increase because of an abuse of a position of trust. (*See* § 3B1.3). At this juncture, if the acceptance of responsibility credit of 2 points was given to the defendant, the Guideline Sentencing score would be 12 and for a defendant in Category 1 Criminal History status, a custody term of from 10 to 16 months would result. If the government's position prevailed and there were 2 points added for more than minimal planning and 2 points added for abuse of a position of trust, the offense level would rise to 18. The defendant with a score of 18 would, in Criminal History Category 1, be faced with a custody range of from 27 to 33 months. The court heard counsels' arguments and agreed with the offense level 18 calculation.

At this juncture the court heard counsel on the question of upward departure. The court concluded that upward departure was warranted from the Guideline Level 18 range of 27 to 33 months to a guideline level of 28 providing for a range of 78 to 97 months for the reasons stated at the hearing.

The Sentencing Reform Act ("SRA") authorized departure under those circumstances where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different than that described." *See* 18 U.S.C. § 3553(b). This section states that

in determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. The guidelines themselves provide a number of standards to be considered when the sentencing court is confronted with the prospect of a departure from the Guidelines. The court at the sentencing hearing referred to the extensive discussion of this in *United States v. Ryan*, 866 F.2d 604 (3d Cir.1989). Included in the standards and the various policy statements by the Commission on the topic of departure, is the overall recognition by the Commission that it did not intend to limit the kinds of factors that could constitute grounds for a departure in an unusual case. The *Ryan* decision reminds us that the Commission noted that it had consciously refused to publish a list of the items that it had considered in developing the Guidelines in order not to restrict, in appropriate cases, a departing court from considering a factor that would plainly support a finding that had not been adequately considered by the Commission. The philosophy embraced in the guideline technique of permitting sentences resulting in departure in unusual cases, and under some circumstances, is the recognition by the Commission of its difficulty in foreseeing and capturing a single set of guidelines that could encompass the vast range of human conduct potentially relevant to a sentencing decision. The Commission predicted that it expects, over time, that experience will allow it to create more accurate guidelines that will specify with more precision when departure should and should not be permitted. *See United States v. Ryan*, 866 F.2d at page 607. Further guidance concerning the Policy Statement at section 5K2.0 of the Guidelines, restates the notion that grounds for departure cannot, by their very nature, be comprehensively listed and analyzed in advance. This Policy Statement states: "The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of

---

1. The guidelines that were in effect at the time the offense was committed in January of 1988 govern the calculation of the Sentencing Guideline range.

sentencing." The Policy Statement then suggests some areas not intended to be all-inclusive that could be considered by a court, from the viewpoint of the Commission, as warranting departure. A significant feature of this ground concerning departure is stated in the last sentence of the first paragraph of 5K2.0, as follows: "Similarly, the court may depart from the Guidelines even though the reason for departure is listed elsewhere in the Guidelines (*e.g.*, as an adjustment or specific offense characteristic), if the court determines that in light of unusual circumstances the guideline level attached to that factor is inadequate."

The particular statute under which this defendant was convicted does not provide for a guided departure. A guided departure is a departure that is specifically suggested by the Guideline itself for the particular offense involved. For example, commentary 1 to section 2G1.1 (Transportation for Prostitution), recommends a downward adjustment of 8 levels where commercial purpose was not involved. This is an instance where the Commission is expecting a structured departure approach and because departure guidance is given to the court, the case would not be in the "unusual case" category. The unusual case circumstance could result in a form of departure known as "unguided departure." (*See* Ch. 1, Part A, Introduction 4(b)). Unguided departures will rest upon grounds referred to in Chapter 5, Part K (Departures), or on grounds not enumerated in the Guidelines as being a basis to depart.

■ Summarizing this for present purposes, it would be fair to say that a sentencing court may consider an unguided departure, in an unusual case, where it finds that the Sentencing Commission has not adequately taken a circumstance or circumstances into consideration. In formulating a departure course, the sentencing court should consider information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law, *see* 18 U.S.C. § 3661; and § 1B1.4. Further, the court may consider reasons for departure listed in the Guide-

lines other than the Guidelines specifically applicable to the offense before the court. Finally, in determining whether a circumstance was adequately taken into consideration by the Commission, the court shall consider only the Sentencing Guidelines, Policy Statements and official commentary of the Sentencing Commission.

■ With this in mind, the court believes that this case is an unusual case and warrants departure upward. The case is unusual because of a combination of facts before the court. The court has found the offense to have been the product of more than minimal planning and, thus, a calculated criminal act involving the theft of $651,-000.00 in cash; unquestionably a substantial sum of money. This occurred under circumstances where the defendant fled the scene of the crime and remained a fugitive for 2 years. During this time he traveled to Canada and Mexico, but we do not know where, or where else exactly. He purports to have "gambled" the money away. The defendant selected the time he determined he would surrender (being the second anniversary date of the crime), the place, as well as the terms and conditions of that step in the process. He refused to disclose in any meaningful way, despite his promise in a plea bargain agreement to do so, any of the facts associated with the theft, his flight, or the disposition of the cash under circumstances where it is conceded that he had possession and control of all of the cash as a fugitive over the two year period. The significance of his promise in his plea agreement to be fully debriefed about the circumstances of the crime is not so much that he has broken that promise, but in the recognition that his proffer can only be deemed an admission by him that, at least at the time that he made the promise, he indeed had knowledge of the underlying facts that the court can only conclude he is still aware of, but has made a calculated decision to withhold.

This offense involves property, and more precisely, $651,000.00 in cash. There is no suggestion that any physical harm, or threats of physical harm, played any part in any of the episodes associated with the

crime. In the usual property offenses before the court, at the time of sentencing, there are two important categories of information to assist the court in the sentencing process and the Guidelines envision this information as being a part of the Guideline Sentencing process. First, the court has all the circumstances associated with the offender and the offense. It understands from the Indictment what the charge is, who the defendant is, and from the guilty plea or verdict, what conduct the conviction represents, as well as the circumstances associated with the commission of the offense. The second major piece of information the court expects to have in a crime involving property is accountability from law enforcement sources, the victims or the defendant, or some of them, for the property that has been lost or affected by the criminal conduct. This commonly takes the form of information from government agents or witnesses, the victims, or other evidence before the court that the property has been recovered in whole or in part, or searched for and not recovered; or the property has been used, spent, damaged, divided, sold, lost, or in some way disposed of. The importance to the court in having this information, as disappointing as the news may be in most cases to the victims, is that it at least allows the court to consider the various factors associated with the property side of the case, with particular emphasis on a realistic restitution or recovery of some or all of the property itself, or a viable substitute. The Guideline Sentencing format contemplates allowing victims to gain knowledge concerning their stake in the property so that other recovery proceedings may be considered in order to recapture or protect property. (*See* 18 U.S.C. §§ 3553(a)(7), 3556). In this case neither law enforcement, nor the victim, nor third persons, know of the whereabouts of the property. The court knows that the defendant is perhaps the only person who has that knowledge. The court also knows that there was a time, when, with the assistance of counsel, he entered into a plea agreement that obligated him to disclose information concerning the offense, including such information as is needed now. The defendant is intelligent, educated, and by his own declaration, a person who is familiar with assessing the relative effect of risk-taking when it comes to money.

At the time of the plea he was advised that by pleading guilty, the maximum prison sentence that could be imposed would be ten (10) years in prison. (*See* 18 U.S.C. §§ 659; 3559(a)(3)). It is not surprising to believe that one, such as the defendant, in that circumstance would be willing to be extremely cooperative in order to reduce the potential ultimate sentence from the maximum ten year term to something less. As previously stated, the Guideline calculation as developed by the probation officer and as calculated, initially provided an offense level of 14 in Criminal History Category I, resulting in a Guideline prison term range of 15 to 21 months. At the time of sentencing, having already served six months, the defendant found himself, without disclosing anything about the whereabouts of the property or its disposition, facing a prison sentence of as little as 9 months but no more than 30 months, the maximum provided by the Guideline calculation, without having to fulfill his promise to divulge the facts concerning the offense and thereby risk having to make restitution or assist in making meaningful restitution.

The court finds by a preponderance of the evidence that the defendant is using the Guideline Sentencing system and philosophy for personal gain and specifically to achieve a substantial monetary profit. He has consciously, yet effectively cut off any chance of recovery, or meaningful restitution. He has thwarted the policy of the Sentencing Commission that restitution be considered, and meaningfully employed where possible in the sentencing procedure. It is useful to be reminded that any defendant who comes to the court and pleads guilty to some charges in return for the promise by the government to dismiss others, is doing so in order to individually profit from the sentencing process. (*See* Fed.R.Crim.P. 11(e)). That is true, but it differs from the circumstance here in that the benefit to the defendant in that other case is not monetary profit. Rather, the

defendant's gain there is a feature of the contemplated sentencing procedure itself, by either a reduced sentence, or a different form of sentence, or a different basis upon which the sentence will ultimately be imposed, whether that is on separate counts, or whether "grouping" is employed as a specially developed procedure created by the Sentencing Commission. All of the consequences of such a plea bargain can plainly be said to have been carefully considered and intended by the Sentencing Commission, and, indeed, adopted by it as a sentencing policy. In the instance concerning the defendant before the court, the profit is cash, pure and simple, and a lot of it, totally outside of the sentencing environment.

Any departure must have as the basis for its justification, reasons and grounds included within the Guidelines themselves, including those for offenses other than that before the court, as well as the commentary and the official policy statements of the Sentencing Commission as to the standards they expect to be honored. There is an analogous guideline, to that provided for violations of 18 U.S.C. § 659, found in the guideline provided for offenses based on fraud and deceit at 2F1.1. Not surprisingly, the base offense level under that Guideline is 6 and it would be elevated to 14 by reason of the amount involved in this case, plus an additional 2 for more than minimal planning and an additional 2 for abuse of position of trust, or a level of 18 which is the identical score applicable to the defendant here. In the commentary at n. 9, it states:

> Dollar loss often does not fully capture the harmfulness and seriousness of the conduct. In such instances, an upward departure may be warranted. Examples may include the following:
>
> *   *   *   *   *   *
>
> (e) The offense caused a loss of confidence in an important institution.

In the case before the court, the amount of the dollar loss is calculated in the Guideline, and the court has taken that into consideration. The court does not believe that the Sentencing Commission, in decid-

ing various levels by which a sentencing score should be increased, based upon the amount of dollar value involved in a property crime offense, adequately took into consideration every unusual circumstance that could occur at some of those levels. Here the theft of $651,000.00 in cash, could, and the court finds that it has been considered by the defendant to be worth serving a relatively modest Guideline level of jail time in return for the real prospect of profiting from the theft for which he stands convicted because no one but the defendant has knowledge of the whereabouts of the cash. That is, in the words of commentary application note 9(e) at 2F1.1, this court finds that the dollar value of the loss here that warrants an increase in the Guideline from 4 to 14 does not fully capture the harmfulness and seriousness of the conduct of *this* defendant in refusing to allow the court to account for the missing property as well as preventing the defendant from profiting from his criminal conduct. In addition the court believes that an upward departure is warranted because a sentence without departure under these circumstances causes a loss of confidence in an important institution, to wit, the United States Sentencing Commission. The reason for this is that the Sentencing Commission, in its great work in developing the Sentencing Guideline procedure, endeavored to bring about a sentencing system that upon enactment as the law of the land, could enhance the ability of the criminal justice system to reduce crime under an effective and fair sentencing system. A Guideline sentencing calculation, such as that before the court that virtually encourages a person to commit a crime or profit by submitting to a system because the sentence is worth the crime and the profits it will produce, will damage the effectiveness of the Commission's role, unless the Guideline Sentence level is departed from. The court concludes that this case, as in the instance of other sound upward departure cases, is the very reason for providing for upward departure. If the Commission's standing in developing its sentencing system is to capture and hold the confidence and respect of all aspects of society that

the criminal justice system touches, upward departure is both expected and required under these circumstances.